COMMONWEALTH of Pennsylvania, Appellee

v.

Ronald Douglas JANDA, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 18, 2010.
Filed Feb. 10, 2011.

Carol A. Marciano, Allentown, for appellant.

James B. Martin, Assistant District Attorney, Allentown, for Commonwealth, appellee.

BEFORE: STEVENS, DONOHUE and MUNDY, JJ.

OPINION BY DONOHUE, J.:

Appellant, Ronald Douglas Janda ("Janda"), appeals from the trial court's June 3, 2009 judgment of sentence imposing an aggregate 156 to 312 months of incarceration for convictions of four counts each of burglary and theft by unlawful taking, and nine counts of receiving stolen property.[1] We vacate and remand for re-sentencing.

Janda's convictions resulted from a string of nine burglaries in Lehigh County from March 8 to August 8, 2007. Each of the burglaries was of a home, and the homes were located within five or six miles of one another. The trial court summarized the nine burglaries in its Pa.R.A.P. 1925(a) opinion:

> The first burglary was discovered on March 8, 2007, at the residence of Robert Koenig and 3420 Woodlea Road, Orefield, North Whitehall Township. Mr. Koenig testified that his residence was ransacked, and many items were taken, including a 40″ LCD television, Coca–Cola memorabilia trays, four to five quarts of Mobile–1 oil, a replica Rolex pocket watch, and $175.00 in rolled quarters. Mr. Koenig testified that he does not know [Janda] and that

---

1. 18 Pa.C.S.A. §§ 3502, 3921, and 3925, respectively.

he never gave [Janda] permission to take any items from his house.

The second burglary occurred on or between February 24th and March 10, 2007, at the home of Donald Brown at 2718 Valley Road, Orefield, South Whitehall Township. Mr. Donald Brown testified that he discovered the burglary upon returning home from a trip to visit his daughter. He noticed that nothing was disturbed in the downstairs of his house, but the upstairs was in "disarray." The contents of all the drawers were dumped out and his mattress and box springs were overturned. Stolen from the residence was an engraved watch and a metal box with silver dollars. Mr. Donald Brown stated that he does not know [Janda] and that he did not give [Janda] permission to take any property.

The third burglary was reported on May 9, 2007, at the residence of Richard and Fay Solt, at 5786 Haasadahl Road, Orefield, Upper Macungie Township. Mr. Solt realized his house had been broken into when he returned home from work. [Janda] took a ceramic piggy bank filled with pennies, change and silver coins, and silver dollar certificates. Ms. Solt testified that she and her husband do not know [Janda] and have never given him permission to enter their property or take their possessions.

The fourth burglary was reported on May 18, 2007, by Daniel and Robbyn Eckert at 7192 Haasadahl Drive, Allentown, Upper Macungie Township. Their home was entered and Longaberger baskets, commemorative coins, a $100 bill, silver certificates, loose change, a lockbox, a Craftsman circular saw, a DieHard battery charger, and a lantern-style flashlight were taken. The Eckerts both testified that they did not know [Janda] and that they did not give him permission to take anything.

The fifth burglary was reported by Harry Brown on May 23, 2007, at 2721 Valley Road, Orefield, North Whitehall Township. Mr. Harry Brown discovered that the French doors to his basement had been kicked in and that his bedroom was "ransacked." [Janda] took from the bedroom a metal lockbox containing documents, a penny collection, a Longaberger basket, cash and loose coins. Mr. Harry Brown testified that he does not know [Janda] and that he never gave [Janda] permission to enter his property or take his belongings. During the investigation, the police were able to collect shoeprint evidence from the doors that had been kicked in.

The sixth burglary occurred on May 23, 2007, at the home of David Brown at 2735 Valley Road, Orefield, North Whitehall Township. [Janda] entered the property and took a computer monitor, lockbox with documents, and two five-gallon gas cans filled with gas. Mr. David Brown testified that he does not know [Janda] and that he did not give him permission to enter his property or to take his items.

A seventh burglary was reported by Donna Sensinger on July 6, 2007, at 2433 Applewood Drive, Orefield, South Whitehall Township. Ms. Sensinger was house-sitting for the home owners, Glen and Lori Wotring, while they vacationed. [Janda] ransacked the living room, bedrooms, and office. [Janda] took a Toshiba satellite laptop, a pillow case, a fireproof safe, $2 bills, loose change, coin wrappers, and a five gallon gas container filled with gas. The Wotring's both testified that they do not know [Janda] and that they never gave [Janda] permission to enter their property or to take their belongings.

The eighth burglary occurred on July 19, 2007, at the residence of John and

Aimee Good at 1996 Folk Drive, Fogelsville, Weisenberg Township. Mr. Good returned home around 5:00 p.m. and found his bedroom in "disarray", with the drawers emptied and shuffled through. Their home was entered through an unlocked basement door and taken [sic] a wooden music box, loose coins, a collection of $2 bills, and $600 cash. Mr. Good testified that he does not know [Janda] and that he did not give him permission to enter his home or to take his belongings.

The ninth burglary occurred sometime between July 23, 2007 and August 8, 2007, at the residence of Hoonani Sinclair, at 3075 Grist Mill Road, Orefield, North Whitehall Township. Her home was entered through an unlocked door and taken were a lockbox that contained four collectible baseball cards, bank CD's, savings bonds, passports, and paperwork. The remainder of the home remained undisturbed. Ms. Sinclair testified that she did not know [Janda] and did not give him permission to enter her home or take her items.

Trial Court Opinion, 4/22/10, at 3–6.

Following his conviction and sentencing, Janda filed a timely post-sentence motion seeking a reduction in restitution, return of property, and challenging the discretionary aspects of his sentence. The motion for reduction of restitution and return of property was granted in part, and the remainder of Janda's post-sentence motion was denied. This timely appeal followed. Janda raises eight issues for our review:

I. Whether the cases and counts required severance, by victim, where the separate offenses did not share a high correlation of details, and there was a palpable danger the jury would improperly cumulate evidence and infer criminal disposition from this cumulation?

II. Whether evidence seized from a series of search warrants executed on the defendant's residence and storage unit should have been suppressed where the warrants lacked probable cause, relied on stale information, lacked particularity, and/or were the fruit of a prior illegal warrant in violation of the Fourth Amendment and/or Article I, Section 8?

III. Whether the best evidence rule precluded testimony about and printed images from the Wotring's digital camera card; and therefore, whether the erroneous admission of such evidence constituted prejudicial error warranting a new trial?

IV. Whether the failure to remove Juror No. 12, who thought she recognized [Janda] as someone who may have been in her apartment at the time of a theft, was prejudicial?

V. Whether the trial judge committed reversible error when he failed to grant the defense request for a missing-evidence instruction and an instruction warning the jury about improper cumulation of evidence?

VI. Whether the evidence was sufficient to establish beyond a reasonable doubt the: (a) Solt burglary and theft offenses where the evidence failed to show [Janda] was the person who committed those crimes; and (b) the Solt, Good, Koenig, Sinclair, Eckert and Donald Brown receiving stolen property offenses where the evidence failed to show [Janda] had guilty knowledge?

VII. Whether the trial judge used an incorrect prior record score and abused its discretion by fashioning an excessive and unreasonable sentence?

VIII. Whether the "deemed denial" of [Janda's] motion for return of property should be reversed where [Janda] established entitlement to lawful possession of the requested property and the

Commonwealth failed to prove the property was contraband?

Janda's Brief at 4.[2]

█ In his first argument, Janda asserts that this matter should have been severed into separate trials for each victim. The record reveals that the Commonwealth filed two criminal informations against Janda. At 703–2008, the Commonwealth charged Janda with burglary, theft by unlawful taking and receiving stolen property in connection with the Wotring burglary. At 4266–2008, the Commonwealth charged Janda with burglary, theft by unlawful taking and receiving stolen property in connection with the burglaries of the Sold, Harry Brown, David Brown and Sinclair residences, and receiving stolen property in connection with the Koenig, Donald Brown, Eckert and Good residences.

On November 11, 2008, the Commonwealth filed a notice of joinder of the two informations. Janda responded with a motion to sever the prosecution into nine separate trials pertaining to each of the nine victims. The trial court denied Janda's severance motion on February 18, 2009.

The applicable Rules of Criminal Procedure provide as follows:

Rule 582. Joinder—Trial of Separate Indictments or Informations

(A) Standards

(1) Offenses charged in separate indictments or informations may be tried together if:

(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or

(b) the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582(a). Likewise, Rule 583 provides that the trial court may order separate trials of offenses "If it appears that any party may be prejudiced by offenses [...] being tried together." Pa. R.Crim.P. 583.

█ The decision to consolidate separate indictments for trial rests with the trial court, and this court will reverse only for a manifest abuse of that discretion. *Commonwealth v. Burton,* 770 A.2d 771, 777 (Pa.Super.2001), *appeal denied,* 582 Pa. 669, 868 A.2d 1197 (2005). Our Supreme Court has addressed the arguments for and against consolidation as follows:

The traditional justification for permissible joinder of offenses or consolidation of indictments appears to be the judicial economy which results from a single trial. The argument against joinder or consolidation is that where a defendant is tried at one trial for several offenses, several kinds of prejudice may occur: (1) The defendant may be confounded in presenting defenses, as where his defense to one charge is inconsistent with his defenses to the others; (2) the jury may use the evidence of one of the offenses to infer a criminal disposition and on the basis of that inference, convict the defendant of the other offenses; and (3) the jury may cumulate the evidence of the various offenses to find guilt when, if the evidence of each offense had been considered separately, it would not so find.

*Commonwealth v. Morris,* 493 Pa. 164, 171, 425 A.2d 715, 718 (1981). In determining whether the trial court abused its discretion, this Court must "weigh the possibility of prejudice and injustice caused by

**2.** For clarity of analysis, we have reversed the order of Janda's sixth and seventh arguments.

the consolidation against the consideration of judicial economy." *Id.*

In *Commonwealth v. Brown*, 351 Pa.Super. 119, 505 A.2d 295 (1986), this Court held that a trial court erred in consolidating indictments due to a lack of correlation in details between the charges. In *Brown* the defendant stood trial for the theft of a television set from two different residences in suburban Pittsburgh. *Id.* at 296. The thefts took place approximately four months apart. *Id.* We concluded that "it was an abuse of discretion for the trial court to deny a defense request for separate trials where, as here, the charges were for offenses which were unconnected in time and similar only in that television sets were stolen during daylight hours from ransacked dwelling houses." *Id.* at 300. Accordingly, we vacated the judgment of sentence and remanded for separate trials. *Id.*

This Court in *Brown* relied upon our Supreme Court's opinion in *Morris*. In *Morris* the Supreme Court held that the standards governing admission of other acts evidence apply when several indictments are consolidated for trial. *Morris*, 425 A.2d at 720, 493 Pa. at 175. In other words, indictments may be consolidated for trial if evidence pertaining to one indictment would be admissible in a trial on another indictment:

> to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial, in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other. *Id.*[3]

Janda argues that *Brown* is controlling in the instant matter in that here, as in *Brown*, there exists no high correlation of details from one theft to the next, and the thefts took place over a span of several months. Janda's argument does not account for the fact that the instant case involves nine burglaries, whereas only two were at issue in *Brown*. The occurrence of nine burglaries over a period of five months renders the instant matter distinguishable from *Brown*. Furthermore, the burglarized homes were located within approximately a five mile to six mile radius of one another. N.T., 3/19/09, at 222–23. Each of the residences was situated such that it was largely obscured from view from the vantage point of the road. Thus, we do not agree with Janda's assertion that the nine thefts lack correlation of pertinent details.

Furthermore, the evidence from each theft was relevant to the prosecution of the other thefts to establish Janda's identity as the perpetrator, Janda's common scheme, and that Janda did not come into possession of the stolen property by accident or mistake. For example, cameras at the Wotring residence, installed for observation and photography of wildlife, captured Janda's car approaching and leaving their residence. A foot print from the Harry Brown residence matched the tread pattern and wear of a boot recovered from the apartment where Janda resided. Police did not find direct evidence of Janda's presence at the other seven residences, but each of the victims was able to identify an

---

**3.** This standard has since been adopted as the governing standard for admission of other acts evidence. Pa.R.E. 404(b).

item recovered from Janda's apartment or storage unit as an item stolen from their home. Thus, joinder of the informations did not result in the introduction of evidence of unrelated crimes from which the jury could infer criminal disposition. Rather, the record reflects a "logical connection" between the thefts such that "proof of one [would] naturally tend to show that [Janda] is the person who committed the other." *Morris*, 425 A.2d at 720, 493 Pa. at 175.

Furthermore, nothing in the record indicates that Janda wanted to, or would have benefited from, testifying in his own defense for some but not all of the alleged thefts. Likewise, the record does not reflect the potential for confusion or unfair cumulation of the evidence by the jury. Each theft took place at a different residence, involved a different victim and distinct physical evidence in the form of the property stolen from each residence. Moreover, the evidence pertaining to each of the nine victims, as summarized by the trial court above, was relatively short and simple. These circumstances render jury confusion unlikely. *See Commonwealth v. Keaton*, 556 Pa. 442, 458–59, 729 A.2d 529, 538 (1999), *cert. denied*, 528 U.S. 1163, 120 S.Ct. 1180, 145 L.Ed.2d 1087 (2000); *see also Commonwealth v. Burton*, 770 A.2d 771, 779 (Pa.Super.2001) ("Where a trial concerns distinct criminal offenses that are distinguishable in time, space, and the characters involved, a jury is capable of separating the evidence."). Finally, the record reveals that the jury was able to distinguish the evidence pertaining to each victim, inasmuch as the jury found Janda not guilty of burglary and theft by unlawful taking in connection with the Sinclair residence. In light of the foregoing, Janda's first argument lacks merit.

■ For his second argument on appeal, Janda asserts that the trial court erred in declining to suppress evidence obtained during the execution of various search warrants for his apartment and a rented storage unit. The following principles govern our review of the trial court's denial of Janda's suppression motion:

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. ... [W]e must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole. Those properly supported facts are binding upon us and we may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Dixon*, 997 A.2d 368, 372 (Pa.Super.2010) (internal citations and quotation marks omitted).

■ The Fourth Amendment of the United States Constitution and Article I, § 8 of the Pennsylvania Constitution guarantee the right of the citizenry to be free from unreasonable searches and seizures. In order to obtain a valid search warrant, the affiant must establish probable cause to believe that execution of the warrant will lead to the recovery of contraband or evidence of a crime. *Commonwealth v. Baker*, 532 Pa. 121, 126–27, 615 A.2d 23, 25 (1992). We review the issuing authority's decision in light of the totality of the circumstances:

Pursuant to the "totality of the circumstances" test set forth by the United States Supreme Court in [*Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ], the task of an issuing authority is simply to make a practical, commonsense decision whether, given all of the circumstances set forth in the affidavit before him, including the

.veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. ... It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a commonsense, non-technical manner.

[Further,] a reviewing court [is] not to conduct a *de novo* review of the issuing authority's probable cause determination, but [is] simply to determine whether or not there is substantial evidence in the record supporting the decision to issue the warrant.

*Commonwealth v. Jones*, 605 Pa. 188, 988 A.2d 649, 655 (2010), *cert. denied*, —— U.S. ——, 131 S.Ct. 110, 178 L.Ed.2d 32 (2010).

██ The record reveals that the police executed three search warrants for the apartment in which Janda resided and one warrant for a storage unit rented in Janda's name. We will address each warrant in turn. The first search warrant for the apartment (hereinafter "the Footwear Warrant"), was obtained based on evidence from a burglary that took place in Berks County.[4] The victims of the Berks County theft observed both Janda and his red Chevrolet Lumina, and subsequently identified Janda as the perpetrator. In addition, the police discovered a clear footprint among several footprints in the snow at the Berks County residence. The foot-

print pattern revealed that someone approached and walked away from a front window. The footprints were not attributable to the victims. Likewise, the police in South Whitehall Township, Lehigh County, were at that time investigating the Wotring burglary, where a red Chevrolet Lumina identified as Janda's vehicle was caught on camera at the time of the burglary.

The affidavit of probable cause set forth the foregoing facts, and requested a warrant to search Janda's Lehigh County apartment for footwear, in order to ascertain whether any of Janda's shoes matched the footprint discovered at the Berks County residence. *See* Affidavit of Probable Cause, 10/19/07. Since the affidavit of probable cause was based on eyewitness observation of Janda at the site of the burglary where the footprint was found, and observation of Janda's vehicle at the site of two burglaries, we believe that the issuing authority could reasonably conclude that police had probable cause to believe that a search of Janda's apartment for footwear would garner evidence of Janda's participation in a crime.[5]

██ Janda also argues that the Footwear Warrant was invalid because the Berks County burglary took place seven months prior to the Footwear Warrant's execution. Settled Pennsylvania law establishes that stale information cannot provide probable cause in support of a warrant. *Commonwealth v. Gomolekoff*, 910 A.2d 710, 713 (Pa.Super.2006). In particular:

[A]ge of the information supporting a warrant application is a factor in determining probable cause. If too old, the

---

4. The Berks County burglary was prosecuted separately in Berks County, and the trial court excluded evidence of that burglary from the trial in the instant case.

5. *See* Pa.R.Crim.P. 201(3) ("A search warrant may be issued to search for and to seize [...] property that constitutes evidence of the commission of a criminal offense.").

information is stale, and probable cause may no longer exist. Age alone, however, does not determine staleness. The determination of probable cause is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant. Rather, we must also examine the nature of the crime and the type of evidence.

*Id.* (quoting *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir.1993)).

In *Commonwealth v. Novak*, 233 Pa.Super. 236, 335 A.2d 773, 775–76 (1975), we noted that a seven-week old observation of drugs did not provide probable cause for a warrant to search the defendant's residence for drugs. We reasoned that a stale observation of items that items that can be quickly disposed of, such as drugs, does not provide probable cause for a warrant absent evidence of an ongoing course of conduct on the part of the defendant. *Id.*

While we have found no controlling case law addressing a warrant for footwear, we observe that shoes, unlike drugs, are not an item commonly disposed of soon after they come into their owner's possession. In light of the governing standard of review, the issuing authority needed to find only a "fair probability" that the shoes Janda wore during the Berks County burglary would be found at his apartment. *Jones*, 605 Pa. at 200, 988 A.2d at 655. Affording the issuing authority deference,[6] as we must, we cannot conclude that the issuing authority was unreasonable in authorizing a search of Janda's residence for footwear seven months after the Berks County burglary. Accordingly, we conclude that the trial court did not err in denying Janda's suppression motion as to the Footwear Warrant.

During the execution of the Footwear Warrant, Janda's roommate retrieved a Toshiba laptop computer that had been hidden under Janda's bed. The Toshiba laptop matched the description of a computer stolen from the Wotring residence. Thereafter, the police obtained a second search warrant (hereinafter "the Computer Warrant"), authorizing a search and seizure in Janda's apartment for the Toshiba laptop computer, as well as other items reported stolen from the Wotring residence, the Berks County residence, and another burglarized Lehigh County residence not involved in the instant matter. The red Chevrolet Lumina was observed at all three residences.

Janda asserts that the Toshiba laptop should have been suppressed as fruit of the poisonous tree from the Footwear Warrant. This argument fails, inasmuch as we have concluded that the Footwear Warrant was valid. Janda also argues that the affidavit in support of the Computer Warrant did not provide sufficient probable cause to establish that Janda was the perpetrator of the burglaries under investigation or that he would still be in possession of stolen items several months after the fact of each burglary. As we noted above, Janda was observed at the site of one of the burglaries, and a vehicle matching the description of Janda's was observed at the site of all three burglaries. In addition, Janda's roommate presented police with a laptop matching the description of one of the stolen items, thus providing evidence that Janda remained in possession of sto-

---

6. The level of deference to be afforded the issuing authority, while not directly at issue, was the subject of disagreement among the majority and concurring opinions in *Jones*. In the instant matter, we would reach the same result whether we afford the issuing authority ordinary deference or great deference. *See Jones*, 605 Pa. 188, 988 A.2d at 659–68 (Castille, C.J., and Todd, J. concurring).

---

len goods. The issuing authority could therefore reasonably conclude that execution of the Computer Warrant would lead to recovery of evidence of Janda's participation in the burglaries. Janda's argument as to the Computer Warrant lacks merit.

Janda's next argument is that a paper notebook and a storage unit rental agreement seized during the execution of the Computer Warrant should have been suppressed, as those items were outside the scope of the warrant. The Computer Warrant did not list a paper notebook and storage unit rental agreement as items to be searched for and seized.[7] The paper notebook contained addresses and dates that corresponded in some respects to several of the burglaries for which Janda was prosecuted. The storage unit rental agreement served as the basis for a subsequent warrant for the storage unit (hereinafter "the Storage Unit Warrant"), from which police recovered additional stolen items.

It is well-settled that a search warrant must describe the items to be seized with specificity. *Commonwealth v. Waltson*, 555 Pa. 223, 230, 724 A.2d 289, 292 (1998). Nonetheless, we must first consider whether Janda had standing to seek the suppression of these items. Our inquiry into standing is twofold: "(1) did the defendant exhibit a subjective expectation of privacy in the place searched or the item seized? and (2) is the defendant's expectation one that society is prepared to recognize as reasonable and legitimate?" *Commonwealth v. Whiting*, 767 A.2d 1083, 1089 (Pa.Super.2001), *appeal denied*, 568 Pa. 699, 796 A.2d 982 (2001).

In *Commonwealth v. Lawley*, 741 A.2d 205, 207–08 (Pa.Super.1999), the police retrieved incriminating evidence from a trash bag in the garage of an apartment that was accessible by various tenants. A tenant who lived with the defendant directed the police to the trash bag. *Id.* at 208. This Court observed that the living arrangements while the defendant resided in the apartment were "communal in nature." *Id.* at 209. In particular, the defendant slept in a shared bedroom and kept most of his possessions in transparent bags rather than in a closet or a piece of furniture. *Id.* Moreover, the seized items were retrieved from a common area. *Id.* We concluded that the defendant exhibited no subjective of privacy in the seized items "as he was aware that his possessions were in plain view at all times and subject to handling by his roommates." *Id.* Furthermore, the defendant did not have an objectively reasonable expectation of privacy in light of the open access to his possessions. *Id.*

The *Lawley* Court distinguished *Commonwealth v. Storck*, 442 Pa. 197, 275 A.2d 362 (1971), a case in which the defendant stored some suitcases, boxes and a bag on a boat in Hawaii. The defendant did not own the boat but represented to the owner his intent to buy it, upon which representation the owner allowed the defendant to store the items. *Id.* at 196, 275 A.2d at 363. Pennsylvania police traveled to Hawaii, told the boat owner they had a right to the defendant's items, and confiscated them. *Id.* The items contained incriminating evidence introduced against the defendant in a Bucks County prosecution. *Id.* The Supreme Court concluded that the defendant retained a protected privacy interest in the suitcases, bag and boxes,

---

7. Specifically, the Computer Warrant authorized the seizure of the Toshiba laptop, a digital camera, U.S. coins and currency, a change

bank, and jewelry. *See* Trial Court Opinion, 4/22/10, at 14.

which the boat owner had no authority to open or use for his own purposes. *Id.* at 200, 275 A.2d at 364. Accordingly, the police could not seize those items without a warrant, and the boat owner had no authority to consent to their seizure. *Id.*

The record before us reveals that Janda shared an apartment with Christopher Manarang ("Manarang"). N.T., 1/26/09, at 23. The apartment was leased in Manarang's name. *Id.* at 27. The apartment contained a common bedroom with two dressers and a common living area. *Id.* at 24–30. Manarang was present during the execution of the Laptop Warrant and directed the police to various items and paperwork belonging to the defendant. *Id.* at 24, 27. Specifically, Manarang directed the police to Janda's dresser. *Id.* at 25. The paper notebook was sitting on top of Janda's dresser amongst some other items. *Id.* Manarang also directed the police to some paperwork, including the storage unit rental agreement, sitting on the coffee table in the living room. *Id.* at 27–30.

Thus, the record reflects that the paper notebook and the rental agreement were sitting in plain view in areas of an apartment commonly used by both Manarang and Janda. In these respects, this case is very similar to *Lawley*, in that the items seized were in plain view and subject to being viewed or handled by Janda's roommate. As such, these facts are not sufficient to establish a subjective expectation of privacy on Janda's part, or one that is objectively reasonable.[8] We therefore find no merit to Janda's argument in support suppression of the notebook and the rental agreement.

We next consider whether the trial court erred in denying Janda's motion to sup-

press evidence seized pursuant to the Storage Unit Warrant. Janda's asserted basis for suppression was that the rental agreement that led police to the storage unit was seized unlawfully. This fruit of the poisonous tree argument lacks merit, as we have already concluded that the tree was not poisoned by an unlawful seizure.

Finally, the record reflects that police executed a third search warrant on the apartment, authorizing the search for and seizure of a lockbox, and various other stolen items (hereinafter "the Lockbox Warrant"). Janda's arguments in support of suppression of the fruits of the Lockbox Warrant are simply a restatement of his arguments for the Footwear and Laptop Warrants. For the same reasons, the arguments lack merit.

Since we have considered and rejected each of Janda's arguments as to the various search warrants and fruit thereof, we conclude that Janda's second argument does not merit relief.

■ For his third argument, Janda argues that the trial court erred in admitting printed photos from the Wotrings' digital camera. Janda argues that the best evidence rule required the Commonwealth to produce the memory card from the Wotrings' camera, rather than the printed photographs. The best evidence rule provides as follows:

> To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules, by other rules prescribed by the Supreme Court, or by statute.

Pa.R.E. 1002.[9] The best evidence rule applies where the contents of the item in

---

**8.** The trial court did not consider Janda's standing to seek suppression of the notebook and rental agreement. We may, however, affirm the trial court's decision on any valid

basis. *Commonwealth v. Taggart,* 997 A.2d 1189, 1197 n. 10 (Pa.Super.2010).

**9.** The Commonwealth submits that Janda has waived this issue for failure to include it in his

question must be proven to make a case. *Commonwealth v. Lewis*, 424 Pa.Super. 531, 623 A.2d 355, 357 (1993). .

In *Lewis*, this Court reversed a conviction where a police officer testified as to the contents of a surveillance video tape but a copy of the tape was not introduced into evidence. *Id.* at 356–57. We reasoned that the best evidence rule[10] exists to prevent a witness from misrepresenting the content of a piece of evidence, in that case a videotape. *Id.* at 359. Since the videotape captured the defendant committing a theft, which evidence was clearly material to the Commonwealth's case, and since the testifying police officer did not personally observe the theft, we concluded that the Commonwealth violated the best evidence rule. *Id.*

In the instant matter, the Commonwealth presented testimony regarding the photographs of Janda's car captured on the Wotrings' camera. Unlike *Lewis*, the Commonwealth also introduced the photographs into evidence. In this regard, the Commonwealth has complied with the best evidence rule.

Janda's asserts that the best evidence was the memory card from the Wotrings' camera. This argument has several flaws. First, Janda does not assert that the printed photograph was—or even might have been—a misrepresentation of the image captured by the camera. Second, the substance of Janda's argument has nothing to do with the best evidence rule. Janda argues that the police should have retained the memory card so that Janda could determine whether the card contained other photos with exculpatory evidence. This is a basis for seeking a missing evidence instruction, which Janda did and which we will address in connection with his fifth argument. The best evidence rule has no bearing on the Commonwealth's failure to provide Janda with access to photographs that were not the subject of any trial testimony. Janda's third argument fails.

 For his fourth argument on appeal, Janda asserts that the trial court erred in declining to remove juror number 12 from the jury panel. We conduct our review according to the following:

> The test for determining whether a prospective juror should be disqualified is whether he is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence, and this is to be determined on the basis of answers to questions and demeanor. . . . It must be determined whether any biases or prejudices can be put aside on proper instruction of the court. . . . A challenge for cause should be granted when the prospective juror has such a close relationship, familial, financial, or situational, with the parties, counsel, victims, or witnesses that the court will presume a likelihood of prejudice or demonstrates a likelihood of prejudice by his or her conduct or answers to questions. . . . The decision on whether to disqualify is within the discretion of the trial court and will not be reversed in the absence of a palpable abuse of discretion. . . .

Pa.R.A.P.1925(b) statement. The Pa.R.A.P. 1925(b) statement alleges that the "trial court erred by overruling defense counsel's objection to allowing testimony about the contents of images and data viewed from the Wotring's camera card." Pa.R.A.P.1925(b) Statement, 2/26/10, at ¶ 5. The record reveals that counsel's objection at trial was based on the best

evidence rule. N.T., 3/18/09, at 170. We conclude, therefore, that Janda's Pa.R.A.P. 1925(b) statement adequately preserved this issue.

**10.** Rule 1002 was not yet adopted at the time of the *Lewis* opinion.

*Commonwealth v. Koehler,* 558 Pa. 334, 359, 737 A.2d 225, 238 (1999), *cert. denied,* 531 U.S. 829, 121 S.Ct. 79, 148 L.Ed.2d 41 (2000).

The record reveals that the juror in question came forward to state Janda resembled a maintenance worker at her apartment building who she believed may have stolen her iPod when he entered her apartment for repair work. The juror lived in the same apartment building as Janda and Manarang. The trial court conducted a hearing in chambers, at which defense counsel informed the juror that Janda never was employed as a maintenance worker at the apartment complex. With that knowledge, the juror represented that she could remain unbiased. She further represented that she had not discussed the matter with any other jurors. *See,* N.T., 3/17/09, at 128–34.

Since it was conclusively established that Janda could not have been the maintenance worker suspected of theft by the juror, and since the juror represented that she could therefore remain unbiased, we conclude that the trial court did not abuse its discretion in declining to dismiss juror number 12. Janda's fourth argument lacks merit.

■■■ Janda's fifth argument is that the trial court erred in declining to give a missing evidence instruction and an instruction regarding improper cumulation of evidence. "[O]ur standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. Galvin,* 603 Pa. 625, 651, 985 A.2d 783, 788–89 (2009), *cert. denied,* —— U.S. ——, 130 S.Ct. 2345, 176 L.Ed.2d 565 (2010). The Rules of Criminal Procedure provide that "[n]o portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate." Pa.R.Crim.P. 647(B). The record reveals that Janda requested a missing evidence instruction, but did not lodge an objection after the trial court omitted that instruction from the charge. *See* N.T., 3/23/09, at 111–12. Janda has therefore waived his challenge to the omission of the missing evidence instruction.

■■■ Janda also submitted a proposed instruction addressing improper cumulation of evidence by the jury. Janda objected to the trial court's omission of the proposed instruction. *Id.* Though the court did not adopt Janda's proposed language, our review of the jury charge reveals that the trial court repeatedly advised the jury that they must find Janda guilty beyond a reasonable doubt of each element of each charge in order to return a conviction on that charge. *Id.* at 101–03. It is well-settled that "[t]he trial court has broad discretion to choose its own wording, as long as its instruction clearly, adequately, and accurately reflects the law." *Commonwealth v. Thomas,* 879 A.2d 246, 265 (Pa.Super.2005), *appeal denied,* 605 Pa. 685, 989 A.2d 917 (2010). Since the trial court's jury charge accurately reflects the law, we find no merit in Janda's argument. Moreover, as the trial court noted on the record (*see* N.T., 3/23/09, at 111–12), and as we explained above in connection with Janda's severance argument, the evidence of each of these burglaries would have been admissible in evidence in a separate trial of each charge. Thus, the jury could, consistent with the law, consider the whole body of evidence in determining Janda's guilt or innocence as to each charge. Janda's fifth argument lacks merit.

Janda's sixth argument is that the Commonwealth failed to produce sufficient evidence in support of his convictions. As to

the Wotring, Solt, Harry Brown and David Brown cases, Janda argues that the Commonwealth did not produce sufficient evidence to identify him as the perpetrator of a burglary or theft. As to all nine of the receiving stolen property convictions, Janda argues that the Commonwealth failed to produce sufficient evidence that he possessed stolen property with knowledge that it was stolen.

The applicable standard of review is well-settled:

> In determining whether the evidence was sufficient to support a defendant's conviction, we must review the evidence admitted during the trial along with any reasonable inferences that may be drawn from that evidence in the light most favorable to the Commonwealth as the verdict winner. If we find, based on that review, that the jury could have found every element of the crime beyond a reasonable doubt, we must sustain the defendant's conviction.

*Commonwealth v. Daniels*, 999 A.2d 590, 594 (Pa.Super.2010).

With regard to Janda's challenge to the four burglary and theft convictions, he cites no law or evidence of record in support of his arguments, and therefore has waived them. Pa.R.A.P. 2119(b), and (c); *Commonwealth v. Natividad*, 595 Pa. 188, 239, 938 A.2d 310, 340 (2007). In any event, Janda's arguments are largely dependent on his argument in support of severance, which we already have rejected.

With regard to the receiving stolen property convictions, the Pennsylvania Crimes Code provides that "[a] person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S.A. § 3925. Janda's argument consists of a single paragraph in which he cites *Commonwealth v. Parker*, 847 A.2d 745, 751 (Pa.Super.2004), for the proposition that mere possession of stolen property is insufficient to prove guilty knowledge. Janda's Brief at 55.

The instant record reflects far more than mere possession of stolen property on Janda's part. The facts set forth in the trial court opinion, which are supported by the record, make clear that Janda's vehicle was caught on film at the Wotring residence at the time of the burglary. Moreover, police retrieved a foot print from a kicked-in door at the Harry Brown residence that was a precise match for the tread pattern and wear pattern of one of Janda's shoes seized during execution of the Footwear Warrant. Each of the nine victims identified a piece of property found in Janda's possession as a stolen item. Finally, the stolen items found in Janda's possession were the fruits of nine crimes that took place within a confined geographic area during a span of several months. The record reflects overwhelming evidence in support of the convictions for receiving stolen property.

In his seventh argument, Janda claims that the trial court erred in calculating his prior record score and in imposing an unreasonably lengthy sentence. The record reflects that Janda raised these issues in a post-sentence motion and preserved them in a concise statement of reasons relied upon for allowance of appeal, in accordance with Pa.R.A.P. 2119(f) and 1925(b). In order to obtain appellate review, the appellant must set forth in the Pa.R.A.P. 2119(f) statement a substantial question as to whether the sentence is not in accordance with the Pennsylvania Sentencing Code. *Commonwealth v. Diamond*, 945 A.2d 252, 258 (Pa.Super.2008), *appeal denied*, 598 Pa. 755, 955 A.2d 356 (2008).

"This Court has concluded that a substantial question exists 'only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code or (2) contrary to the fundamental norms which underlie the sentencing process.'" *Id.* (quoting *Commonwealth v. Bullock*, 868 A.2d 516, 528 (Pa.Super.2005), *affirmed* 590 Pa. 480, 913 A.2d 207 (2006), *cert. denied*, 550 U.S. 941, 127 S.Ct. 2262, 167 L.Ed.2d 1103 (2007)).

 We now consider Janda's argument as to his prior record score. Specifically, Janda argues that the trial court erroneously calculated Janda's prior record score as it pertains to several prior New Jersey offenses. This Court has held that improper calculation of a prior record score based on out-of-state offenses raises a substantial question. *Id.; see also Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa.Super.2003). Accordingly, we will address this argument on its merits, according to the following standard:

[T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Commonwealth v. Walls*, 592 Pa. 557, 564, 926 A.2d 957, 961 (2007).

 The Pennsylvania sentencing guidelines provide that out-of-state offenses are to be scored as "a conviction for the current equivalent Pennsylvania offense." 204 Pa.Code § 303.8. In this case, the trial court concluded that Janda's prior record score was four. Three of the four points were attributed to prior New Jersey offenses. The trial court imposed one point for a forgery conviction in Warren County New Jersey, and one point for a theft conviction in Monmouth County, New Jersey.[11] Sentences in the Warren and Monmouth County proceedings were imposed within one week of each other, and the trial judges arranged for the sentences to run concurrently. Janda argues, therefore, that these two offenses should have counted only as one point toward his prior record score, because counting each offense separately is not in accordance with the intent of the New Jersey trial court judges.

Section 305 of the guidelines governs which prior offenses are to be included in the computation of a prior record score. In particular, § 305 provides that, where several offenses arise out of a single judicial proceeding, the most serious offense and any other offense for which a consecutive sentence is imposed are to be included in the prior record score calculation. *Id.* at § 303.5(b)(1–2). Offenses for which the sentence runs concurrent to the most serious offense do not count toward the prior record score. The guidelines do not impose any restriction on the computation of a prior record score based on convictions arising from *separate* judicial proceedings. Since the guidelines impose no restrictions on including offenses from separate judi-

11. The parties do not dispute that these offenses were equivalent to one-point offenses if committed in Pennsylvania. *See* 204 Pa.Code § 303.7(a)(4).

cial proceedings in separate counties in the prior record score, Janda's argument does not afford a basis upon which we can conclude that the trial court abused its discretion by including the Warren and Monmouth County offenses in its computation of Janda's prior record score.

Janda next argues that the trial court improperly added one point to Janda's prior record score for a Bergen County, New Jersey conviction ("the Bergen County Offense") for writing checks on accounts with insufficient funds. The parties agree that the equivalent offense in Pennsylvania is bad checks, 18 Pa.C.S.A. § 4105, which can be a summary, misdemeanor or felony offense, depending upon the dollar amount of the bad checks. If the Bergen County Offense was the equivalent of the summary version of bad checks, it would not count toward Janda's prior record score. 204 Pa.Code § 303.7.

Janda argues that the trial court erred in including this offense in its computation of the prior record score without evidence of the value of the bad checks. The only information in the record concerning the Bergen County Offense is that the proceeding took place in New Jersey Municipal Court, where Janda was not entitled to a trial by jury and subject to no more than six months of incarceration and/or a $1,000.00 fine. The trial court, reasoning that the penalty for summary offenses in Pennsylvania cannot exceed 90 days of incarceration and/or a $300.00 fine, concluded that the New Jersey offense should be regarded as the equivalent of a misdemeanor.

We believe the trial court's analysis is incomplete. The fact that New Jersey has a special court for offenses not punishable by more than 6 months or $1,000.00 does not reveal anything about the particulars of Janda's crime. The probation officer who testified at sentencing asserted that the New Jersey Municipal Court tries misdemeanor cases, but provided no specific information about Janda's case, such as to the amount of the checks involved. N.T., 6/3/09/, at 11. Thus, the record contains insufficient facts from which the trial court could determine the equivalent Pennsylvania offense. Where, as here, the parties dispute the facts and legal implications of the defendant's prior convictions, our legislature has directed the trial court to find facts and render a decision based on the preponderance of the evidence. *See, e.g.,* 42 Pa.C.S.A. §§ 9712, 9714. In the instant matter, the record at sentencing does not reflect any factual basis for concluding that Janda's Bergen County Offense was the equivalent of a misdemeanor or felony, and thus subject to inclusion in the prior record score. Accordingly, we will vacate Janda's sentence and remand for fact-finding as to that offense, followed by resentencing. In light of our disposition of this issue, we will not address Janda's argument that his aggregate sentence was unreasonably lengthy.

In his eighth and final argument, Janda asserts that the trial court erred in denying a motion for return of property. Janda asserts that various items seized from his possession were not proven by the Commonwealth to be stolen items. Rule 588 of the Pennsylvania Rules of Criminal Procedure entitles a defendant to move for return of property seized pursuant to a warrant on the ground that he or she is lawfully entitled to possession. Pa.R.Crim.P. 588(a). The movant bears the initial burden of coming forth with evidence of lawful entitlement to possession of the property. *In re Firearms, Eleven,* 922 A.2d 906, 912 (Pa.Super.2007), *appeal denied,* 594 Pa. 680, 932 A.2d 1289 (2007). If the movant meets this initial burden, the Commonwealth bears the burden of proving by a preponderance of the

evidence that the items in question are contraband. *Id.* "Our review of a trial court's decision on a petition for return of property is limited to examining whether the findings of fact were supported by competent evidence and whether the trial court abused its discretion or committed legal error." *Commonwealth v. Johnson,* 931 A.2d 781, 783 n. 2 (Pa.Comm.2007).

Janda relies on *Petition of Maglisco,* 341 Pa.Super. 525, 491 A.2d 1381 (1985), in which this Court held that the petitioner was entitled to have several rifles returned to her possession. In the underlying offense, the petitioner used a .38 caliber revolver to shoot her husband. *Id.* at 1382. Police seized the revolver as well as several rifles in the wife's possession. *Id.* No evidence indicated that any of the rifles was used in the crime, and the law did not support forfeiture of the rifles simply because they were firearms and a firearm was used in the underlying offense. *Id.* at 1384–85.

We distinguished *Maglisco* in *Commonwealth v. Doranzo,* 365 Pa.Super. 129, 529 A.2d 6 (1987). In *Doranzo,* the defendant was convicted of 47 counts of receiving stolen property, and sought return of various items that he claimed were seized only because they were commingled with stolen property. *Id.* at 7. The items in question were not claimed by any of the victims. *Id.* The defendant was in the business of receiving and selling stolen goods, and the items he sought to have returned were stored together with admittedly stolen items. *Id.* at 8. We concluded that direct evidence that the items were stolen, though desirable, was unnecessary:

> The whole of the evidence created a very strong inference that the property in question was illegally possessed. The fact that no one had claimed the proper-

ty does not necessarily controvert the impression that the property was illegally possessed. There are many reasons which could explain why stolen property could go unidentified. The owner may never have realized that it was stolen, believing it to have been misplaced or lost. Or, despite it being stolen, the owner may not have bothered to report it believing it to be an exercise in futility.

*Id.*

██ Janda's argument in support of his initial burden is that the items were seized from his possession, and that he testified that his possession was lawful. Janda's Brief at 57. The trial court deemed Janda's testimony not credible. We have held that "[w]here the trial court is not provided with credible evidence as to ownership or entitlement, a motion for return of money should not be granted." *In re Firearms, Eleven,* 922 A.2d at 912. Janda testified that various coins seized from his possession were part of his coin collection that he acquired during his foreign travels or on eBay. N.T., 11/2/09, at 23–26, 28. Janda was unable to produce documentation of the eBay transactions. *Id.* at 35–36. Janda testified that the watches in his possession were part of a collection that he received as birthday gifts. *Id.* at 26–27, 30. Janda identified a ladies watch as one that a former girlfriend returned to him. *Id.* at 27. As to a Coach bag, Janda testified that he bought it in an airport in Uruguay. *Id.* at 28–29. A computer monitor—identical to one reported stolen—Janda claimed he got from an acquaintance who does "estate cleanouts." *Id.* at 31. The monitor was identical in all respects to a monitor reported stolen, but it had no unique identifying marks, such as nicks or scratches, and the owner did not know the serial number.[12]

---

12. The trial testimony was incorporated into the record at the hearing on Janda's motion

Based on the foregoing, we cannot conclude that the trial court abused its discretion in finding that Janda failed to carry his initial burden. Janda failed to produce documentation to support any of his alleged lawful purchases of the items, including documentation that could have been retrieved from his eBay account.

In any event, the record contains more than sufficient evidence from which the trial court could find that the Commonwealth proved by a preponderance of the evidence that the items in question were stolen property. The items—coins, jewelry and computer hardware—were of like kind to items proven to be stolen. This case, therefore, is easily distinguishable from *Maglisco*, where the underlying offense involved one distinct crime and one distinct pistol. The Commonwealth proved at trial that Janda was in the practice of committing burglaries and retaining stolen property similar to the items at issue in Janda's Rule 588 motion, thus bringing the instant facts in line with those of *Doranzo*. Also similar to *Doranzo*, the items were stored along with other items proven to be stolen. Furthermore, the record establishes that a string of unsolved burglaries took place during the same time and in the same general location as those for which Janda was convicted. *Id.* at 48–49. The items reported stolen in those burglaries were similar to the items at issue the Rule 588 motion. *Id.* In light of all the foregoing, the trial court did not err in denying Janda's motion for return of property.[13]

In summary, we have concluded that further fact-finding is necessary to determine Janda's prior record score. The remainder of Janda's arguments on appeal

for return of property. N.T., 11/2/09, at 8.

13. We observe that the motion was granted in part, as to footwear retrieved during execu-

lack merit. We therefore vacate the judgment of sentence and remand for re-sentencing.

Judgment of sentence vacated. Case remanded for re-sentencing. Jurisdiction relinquished.

tion of the Footwear Warrant that was not linked to any burglary.