J-S59038-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JOHN W. CLAYBURNE | |
| Appellant | No. 2414 EDA 2015 |

Appeal from the Judgment of Sentence July 13, 2015
in the Court of Common Pleas of Philadelphia County Criminal Division
at No(s): CP-51-CR-0004125-2014

BEFORE: BENDER, P.J.E., OLSON, J., and FITZGERALD,[*] J.

MEMORANDUM BY FITZGERALD, J.:          **FILED AUGUST 31, 2016**

Appellant, John W. Clayburne, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas following a jury trial and his convictions for first-degree murder[1], firearms not to be carried without a license,[2] and two counts of robbery.[3] Appellant challenges the sufficiency and the weight of the evidence. We affirm.

In its opinion, the trial court summarized the relevant facts as follows:

Around midnight on March 8, 2013, Michael King ("King") also known as "Poogie" was killed by gunfire while driving a van near the Cobbs Creek Inn in the City and County of Philadelphia. Earlier that night, King had gone

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(a).

[2] 18 Pa.C.S. § 6106(a)(1).

[3] 18 Pa.C.S. § 3701(a)(1)(i).

to the home of his friend Lamonte Butts ("Butts") also known as "Mont" and said he wanted to get high on pills. Butts told King that he did not feel like going out, but that King could take his minivan and go to make the purchase. King was gone for about an hour then returned to Butts saying that he could not find anyone from whom to purchase drugs. Butts joined King in the van to continue the search for drugs, and the pair ended up at the Cobbs Creek Inn located at Cobbs Creek Parkway and Catharine Street. Upon arrival at the Inn, Butts went inside where he came into contact with Peter Hutton ("Hutton") also known as "Petey", who was known to him. Butts had $700-$800 on his person when he went into the bathroom with Hutton to discuss the exchange of drugs for cash. Appellant also entered the bathroom. Hutton said that he could provide the drugs, but that the drugs were are [sic] at the home of his girlfriend. Butts and Hutton then left the Inn and walked toward the minivan where King was waiting in the driver's seat. As they approached the van, Butts noticed that they were being followed by a male wearing a hoodie who was later identified by Butts as . . . Appellant. Butts jumped into the front passenger seat of the van and Hutton entered the minivan through the sliding rear door. Appellant approached Butts' door with a handgun drawn. Butts told King to drive off. As King began to drive, there were gunshots, one (1) of which struck King in the head and caused the van to crash into cars parked across the street from the Inn. . . . Appellant came over to the crashed van and pointed the gun at Butts' head. Butts immediately threw the cash onto the ground and ran away.

Jumar Smith ("Smith") also known as "Gator Boots" or "Gator", who was at the door of the Inn at the time of the shooting, witnessed Butts and Hutton get into the van and saw a third person whom he did not recognize attempt to get into the minivan. Smith heard shots fired, saw the van crash, and watched Butts and Hutton run toward 63rd and Webster Streets. From his vantage point Smith observed the third male bend down to pick up cash from the ground then run toward 63rd Street and Cedar Avenue. Smith went into the Inn and called the police.

Dr. Edwin Lieberman of the Philadelphia Medical Examiner's Office performed the autopsy of King. The cause of death was determined to be one (1) gunshot wound to the head. The bullet entered near the left eyebrow and exited behind the left ear. The manner of death was found to be homicide. . . . Appellant was apprehended by United States Marshalls [sic] in North Carolina on April 22, 2013. . . . Appellant did not have a valid license to carry a firearm.

Hutton made a statement to the police which he consented to have videotaped. In his statement, Hutton detailed events of the attempted drug sale and Robbery which were consistent with the account of Butts. Hutton saw Appellant fire two to three (2-3) shots. After giving his statement, Hutton failed to appear to six (6) court listings to testify for the Commonwealth in the instant matter. A bench warrant was issued, and once in custody for Contempt of Court, Hutton refused to be sworn in to testify at two (2) subsequent listings, which caused the case to be dropped for lack of prosecution. A material witness petition was filed by the Commonwealth for Butts and Hutton and charges were once again brought against Appellant. Hutton refused to testify at a ninth listing of this case and at trial, disavowed his statement and claimed the statement was the result of him being beaten up by Philadelphia police. A series of recorded phone calls between Hutton and various family members revealed that Hutton intended not to cooperate with the Commonwealth against . . . Appellant, and evidenced that he and Appellant had been in communication while both were in custody at Curran-Fromhold Correctional Facility (CFCF).

Trial Ct. Op., 2/1/16, at 2-4 (footnotes omitted).

A jury convicted Appellant of first-degree murder, firearms not to be carried without a license, and two counts of robbery on July 13, 2015.[4] That

---

[4] The trial court issued a progression charge with respect to homicide, and the jury, having found Appellant guilty of first-degree murder, did not render a verdict on the lesser charges of second or third-degree murder. *See* N.T.,

same day, the court sentenced Appellant to life imprisonment without the possibility of parole, with no further penalty on the remaining charges. On August 4, 2015, Appellant timely filed a notice of appeal. The court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied and subsequently filed an amended Rule 1925(b) statement.

Appellant raises the following issues for our review:

> I. Is [Appellant] entitled to an Arrest of Judgment on the charge of Murder in the First Degree, Two Counts of Robbery and One Count of [firearms not to be carried without a license], where the evidence is insufficient to sustain the verdict and with special regard to the charge of Murder in the First Degree where the Commonwealth did not present sufficient evidence to establish malice, a specific intent to kill or premeditation?
>
> II. Is [Appellant] entitled to a new trial on all charges where the greater weight of the evidence does not support the Commonwealth's verdict and would not establish that [Appellant] was a principal, a criminal conspirator or an accomplice and where the verdict was based on speculation, conjecture and surmise?

Appellant's Brief at 3.

Preliminarily, we note that Appellant's Rule 1925(b) statement[5] and his statement of the question on appeal suggest sufficiency of the evidence

---

7/10/15, at 94-95; N.T., 7/13/15, at 4. Additionally, the trial court charged the jury with robbery involving the infliction of serious bodily injury or the threat of inflicting serious bodily injury. N.T., 7/10/15, at 73-74. **See** 18 Pa.C.S. § 3701(a)(1)(i), (ii).

[5] Appellant's Rule 1925(b) statement provides, in relevant part:

challenges to his convictions for robbery and firearms not to be carried without a license. *See id.*; Appellant's Am. Pa.R.A.P. 1925(b) Statement, 12/22/15, at 1.

> [W]hen challenging the sufficiency of the evidence on appeal, the [a]ppellant's 1925 statement must specify the element or elements upon which the evidence was insufficient in order to preserve the issue for appeal. Such specificity is of particular importance in cases where, as here, the [a]ppellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt.

*Commonwealth v. Garang*, 9 A.3d 237, 244 (Pa. Super. 2010) (citations omitted). Moreover, an appellate brief must provide substantive argument and citation to relevant authority in support of a sufficiency claim. *See* Pa.R.A.P. 2119(b), (c); *Commonwealth v. Janda*, 14 A.3d 147, 164 (Pa. Super. 2011) (stating a failure to cite law or evidence in support of an argument in a brief constitutes waiver).

---

> That [Appellant] is entitled to an arrest of judgment on all charges, including, murder in the first degree, robbery and [firearms not to be carried without a license]. The evidence is insufficient to sustain the verdict. The evidence did not establish that [Appellant] was a principal, conspirator or an accomplice to any of the charges. Moreover, and with regard to the charge of murder in the first degree, the evidence did not establish that [Appellant] acted with a specific intent to kill or with premeditation or malice. An arrest of judgment is required.

Appellant's Am. Pa.R.A.P. 1925(b) Statement, 12/22/15, at 1.

Instantly, Appellant's Rule 1925(b) statement fails to identify any element of robbery or firearms not to be carried without a license. Additionally, as noted below, Appellant's brief concedes there was sufficient evidence to find that he was engaged in a robbery and discharged a firearm during the incident. Appellant's Brief at 10. Accordingly, Appellant's sufficiency claims for robbery and firearms not to be carried without a license are waived. *See* Pa.R.A.P. 2119(b), (c); *Janda*, 14 A.3d at 164. However, Appellant has preserved and appropriately argued a challenge to the sufficiency of the evidence regarding his conviction of first-degree murder, and we will address that claim.

Appellant argues the evidence was insufficient to support his conviction for first-degree murder because the Commonwealth failed to prove he acted with a specific intent to kill when he discharged the firearm. Appellant's Brief at 9-11. Appellant concedes the Commonwealth produced evidence that established he participated in the robbery and discharged a firearm. *Id.* at 10. Appellant claims that his actions during the chaotic encounter and his decision not to shoot Butts are inconsistent with premeditation or a specific intent to kill. *Id.* at 11. We conclude Appellant is not entitled to relief.

Our review of sufficiency of the evidence is governed by the following principles:

> As this case involves a question of law, our scope of review is plenary. Our standard of review is *de novo*.

* * *

[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . does not require a court to ask itself whether **it** believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, it must determine simply whether the evidence believed by the fact-finder was sufficient to support the verdict. [A]ll of the evidence and any inferences drawn therefrom must be viewed in the light most favorable to the Commonwealth as the verdict winner.

* * *

In applying this standard, [the reviewing court must] bear in mind that: the Commonwealth may sustain its burden by means of wholly circumstantial evidence; the entire trial record should be evaluated and all evidence received considered, whether or not the trial court's ruling thereon were correct; and the trier of fact, while passing upon the credibility of witnesses and the weight of the proof, is free to believe all, part, or none of the evidence.

***Commonwealth v. Ratsamy***, 934 A.2d 1233, 1235-36, 1237 (Pa. 2007)

(quotation marks and citations omitted).

The Pennsylvania Consolidated Statutes define first-degree murder as:

**§ 2502. Murder**

**(a) Murder of the first degree.—**A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

18 Pa.C.S. § 2502(a).

This Court has held:

In order for a jury to find a defendant guilty of murder of the first degree, the Commonwealth must prove, beyond a reasonable doubt, that a human being was [un]lawfully

- 7 -

killed, that the accused was responsible for the killing, and that the accused acted with a specific intent to kill.

> [A] specific intent to kill may be inferred from the use of a deadly weapon to inflict injury on a vital part of the body. A deadly weapon is defined as [a]ny firearm, whether loaded or unloaded, or any devise designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or is intended to be used, is calculated or likely to produce death or serious bodily injury.

*Commonwealth v. Talbert*, 129 A.3d 536, 543 (Pa. Super. 2015) (citations and quotation marks omitted). "An intentional killing is a killing by means of poison, or by lying in wait, or any other kind of willful, deliberate and premeditated killing." *Commonwealth v. Mollett*, 5 A.3d 291, 313 (Pa. Super. 2010) (citation and quotation marks omitted). Furthermore, "specific intent may be formed in an instant." *Id.* (citation omitted).

Instantly, Butts testified that he saw Appellant pull a gun out of his pocket as he and Hutton were going to King's van. N.T. Trial, 7/7/15, at 203. Butts "jumped in the van," told King to "pull off," and then heard a gunshot. *Id.* Butts looked over at King and saw he was "shot in the face dead." *Id.* The Commonwealth also read Butts's statement to police immediately following the shooting. *Id.* at 209. In that statement, Butts described the shooting as follows:

> I walked out of the bar and went back to the minivan, which was parked outside with [King], and that's when [Hutton] got right in the back seat on my side of the minivan. I looked out the window and that is when I saw

- 8 -

> the guy that was with [Hutton] in the bar was walking right towards the van, right towards me in the passenger side.
>
> *    *    *
>
> He was walking with a gun in his hand. He was taking it out of his jacket pocket. It was silver .38 revolver. He was pointing the gun right at me. Then this guy starts saying stuff like, stop, hold up, get out of the car.
>
> As he was pulling on the door handle, I started to tell [King] to pull off, that this guy has a gun, [King] was asking what was I talking about, he was asking, what's wrong like? I said, this guy's got a gun, pull off, pull off.
>
> *    *    *
>
> This guy got the door opened as I was trying to get the door locked. That's when I heard the gun go off.

*Id.* at 215-17.

Additionally, Dr. Lieberman, the Commonwealth's expert in forensic pathology, testified that the gunshot entered King's head in his left eyebrow, a quarter-inch from the center of his body. N.T., 7/9/15, at 22. He opined King was looking directly at the gun when Appellant fired it. *Id.* at 26.

As noted above, Appellant did not need an extended period of time to form the specific intent to kill. *See Mollett*, 5 A.3d at 313. Rather, the requisite intent could reasonably be inferred from the totality of the circumstances, namely that Appellant at a relatively close range, while attempting to stop the vehicle, and after opening the front passenger door shot King, the driver. *See Talbert*, 129 A.3d at 543. The jury was free to weigh the evidence that Appellant discharged the firearm as King was

looking directly at the weapon. *See Ratsamy*, 934 A.2d at 1236. Therefore, mindful of our standard of review, we discern no basis to disturb the jury's finding that Appellant acted with the specific intent to kill, and affirm the conviction for first-degree murder. *See id.*

In his second issue, Appellant argues the weight of the evidence did not support a conviction for first-degree murder. Appellant's Brief at 12. Specifically, Appellant claims the weight of the evidence reflects that he discharged the firearm in a moment of chaos, and not because he engaged in premeditation and consciously formed a specific intent to kill. *Id.* at 12-13. Appellant alleges the jury employed speculation as to Appellant's mental state at the time of the crime. *Id.* at 13. We conclude Appellant is not entitled to relief.

Rule 607 of the Pennsylvania Rules of Criminal Procedure states:

**Rule 607. Challenges to the Weight of the Evidence**

(A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:

(1) orally, on the record, at any time before sentencing;

(2) by written motion at any time before sentencing; or

(3) in a post-sentence motion.

Pa.R.Crim.P. 607(A). Thus, a weight of the evidence claim is not preserved if Appellant raises the claim for the first time in his Rule 1925(b) statement, and we may not address the merits of the claim even if the trial court

addresses the issue in its Rule 1925(a) opinion. ***Commonwealth v. Sherwood***, 982 A.2d 483, 494 (Pa. 2009); ***Commonwealth v. Thompson***, 93 A.3d 478, 490 (Pa. Super. 2014).

Instantly, Appellant did not raise his weight of the evidence issue either before or after sentencing in a post-sentence motion. ***See*** Pa.R.Crim.P. 607(A). Rather, Appellant raised this issue for the first time in his Rule 1925(b) statement, which did not properly preserve the issue, although the trial court elected to consider it in its Rule 1925(a) opinion. ***See Sherwood***, 982 A.2d at 494. Therefore, Appellant's weight of the evidence issue is waived. ***See id.***

In any event, Appellant's weight of the evidence challenge would merit no relief, as our review reveals no basis upon which to conclude that the trial court abused its discretion when suggesting Appellant was not entitled to a new trial. ***See Commonwealth v. Manley***, 985 A.2d 256, 262 (Pa. Super. 2009) (reiterating that "[a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence"). Therefore, Appellant's weight of the evidence claim would merit no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2016