J. S03005/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
       v.   :
  :
QUYDEEM HAWKINS,   :   No. 538 EDA 2015
  :
       Appellant   :

Appeal from the Judgment of Sentence, February 13, 2015,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0002404-2014

BEFORE: FORD ELLIOTT, P.J.E., OTT AND JENKINS, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:       **FILED MARCH 15, 2016**

Quydeem Hawkins appeals from the February 13, 2015 judgment of sentence following his convictions of first-degree murder, aggravated assault, violation of the Uniform Firearms Act ("VUFA"), and possession of an instrument of crime ("PIC").[1] We affirm.

The trial court provided the following facts:

> The facts, when viewed in the light most favorable to the Commonwealth as the verdict-winner, show that at approximately three o'clock in the afternoon of October 21, 2013, the defendant, Quydeem Hawkins, and another male snuck around the corner of Ditman and Granite Streets in Philadelphia and began firing at a group of males congregated around the steps of 5121 Ditman Street, resulting in the murder of Khaalid Boyd. Andre Richardson, Domonte Dark and Kelsey Dark, friends of the deceased witnessed the shooting.

---

[1] 18 Pa.C.S.A. §§ 2502(a), 2702(a)(4), 6106(a)(1), and 907, respectively.

Each gave statements to the police following the shooting, which identified the defendant, 'Quiz' as the gunman.[2]

Andre Richardson testified that on October 21, 2013, at approximately 3:00 in the afternoon he was outside of 5123 Ditman Street with several friends, including Khaalid Boyd and Kelsey Dark, when the defendant, wearing a red hoodie, and another unknown male ran up and started shooting at them. Mr. Richardson testified that he ran when the shots were fired, but returned later to see if Khaalid Boyd was alright. Richardson did not tell the officers at the scene what he had observed as it was his intention to exact retribution for the shooting himself.

Domonte Dark's testimony established that he heard gunshots and that Quiz "had on a red hoody [sic] and he was shooting at us." Mr. Dark further stated that "after they finished shooting they got back into the Honda Accord. Quiz pointed at me and skid off, then he hit a black Ford. I think he was coming after me." Domonte believed that "It was over some he say/she say stuff over the block. The problem was between me and him. Someone told him that I was out to kill him."

Kelsey Dark testified that he was outside of 5121 Ditman Street on October 21, 2013, when he heard shots and ran. At the time he was living next door at 5123 Ditman Street. Kelsey Dark was interviewed by the police regarding this incident on October 31, 2013, at which time he stated that his brother, Domonte Dark "got shot in the leg a couple days ago," in response to whether there were any recent threats made towards him or his brother. Detective Charles Grebloski, who took the interview of Kelsey Dark, also testified at trial regarding Kelsey Dark's statements.

---

[2] Appellant admitted to the police that his nickname is "Quiz." (Notes of testimony, 2/11/15 at 135.)

Kelly Myhausuk, a school psychologist who works at Hardy Middle School, located on Torresdale Avenue, near the 5100 block of Ditman Street testified as well. Ms. Myhausuk testified that on October 21, 2013, she left the school around 3:30 p.m. driving her car at the intersection of Ditman and Granite Streets. While at the junction, she saw "two young African-American males coming down Granite, hugging the side of the building. "I observed them peeking around the corner looking up and down Ditman, which I kind of thought was suspicious." "The male closest to me was in a red hoody [sic]." She observed the man in the red hoodie take out a gun, and then both men proceed into the middle of Ditman Street. Ms. Myhausuk testified that she had seen a crowd of people congregated outside of the third or fourth house from the corner.

When Ms. Myhausuk looked up after the shooting had stopped, she started to proceed through the intersection, but was "hit by a car traveling on Granite," which pushed her car "up onto the sidewalk and [the] air bags deployed." She described the car that hit her as a gold, older model sedan, and the passengers in that car to be the same men that had just fired the shots. She stated, "I believe the male in the red hoody [sic] was driving the car and the male with the white tee shirt was a passenger."

There was further evidence provided at trial that a gold Honda was left at the scene, which was processed for evidence, and a video was recovered from a corner store that showed people fleeing the area.

Trial court opinion, 6/19/15 at 3-5 (citations omitted).

The trial court also provided the following procedural history:

[Appellant] was arrested on November 17, 2013 and charged with murder, attempted murder, conspiracy, firearms not be carried without a license,

recklessly endangering another person, aggravated assault, and possessing an instrument of crime. [Appellant] was held over for court on all charges after a preliminary hearing on March 4, 2014. A jury trial was held from February 9, 2015 through February 13, 2015, wherein [appellant] was convicted of the above-noted crimes. [Appellant] was sentenced to life without parole for first-degree murder and concurrent terms of confinement for the remaining charges. [Appellant] timely appealed.

Trial court opinion, 6/19/15 at 1-2.

Appellant raises the following issues for our review:

I. Is the appellant entitled to an arrest of judgment with respect to his convictions for first degree murder, aggravated assault, violation of the Uniform Firearms Act and possessing instruments of crime and since the evidence is insufficient to sustain the verdicts of guilt as the Commonwealth failed to sustain its burden of proving the appellant's guilt beyond a reasonable doubt?

II. Is the appellant entitled to a new trial as a result of the trial court's ruling that denied his motion for a mistrial?

Appellant's brief at 4.

In his first issue on appeal, appellant avers that the Commonwealth failed to produce sufficient evidence to prove his guilt beyond a reasonable doubt of any of the offenses with which he was charged. When reviewing a conviction for the sufficiency of the evidence, we are held to the following standard:

In reviewing the sufficiency of the evidence, we view all evidence admitted at trial in the light most favorable to the Commonwealth, as verdict

winner, to see whether there is sufficient evidence to enable [the fact-finder] to find every element of the crime beyond a reasonable doubt. This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to a crime beyond a reasonable doubt. Although a conviction must be based on "more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty."

Moreover, when reviewing the sufficiency of the evidence, the Court may not substitute its judgment for that of the fact finder; if the record contains support for the convictions, they may not be disturbed.

*Commonwealth v. Stokes*, 78 A.3d 644, 649 (Pa.Super. 2013), *appeal denied*, 89 A.3d 661 (Pa. 2014) (citations omitted).

Moreover, when applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of the witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence.

*Commonwealth v. Estepp*, 17 A.3d 939, 943-944 (Pa.Super. 2011), *appeal dismissed as improvidently granted*, 54 A.3d 22 (Pa. 2012) (citations omitted).

Specifically, appellant avers that the evidence presented by the Commonwealth was insufficient to warrant his convictions of first-degree murder, aggravated assault, VUFA, and PIC. We shall address each offense individually.

First-degree murder is defined as follows: "[a] criminal homicide constitutes murder in the first degree when it is committed by an intentional killing." 18 Pa.C.S.A. § 2502(a). Our supreme court has provided the following relating to the sufficiency of the evidence in a first-degree murder case:

> First-degree murder is an intentional killing, i.e., a "willful, deliberate and premeditated killing." 18 Pa.C.S. § 2502(a), (d). In order to prove first-degree murder, the Commonwealth must establish that: (1) a human being was killed; (2) the accused caused the death; and (3) the accused acted with malice and the specific intent to kill. *Commonwealth v. Staton*, 38 A.3d 785, 789 (Pa. 2012). The jury may infer the intent to kill based upon the defendant's use of a deadly weapon on a vital part of the victim's body. *Commonwealth v. Johnson*, 604 Pa. 176, 985 A.2d 915, 920 (2009) (citing *Commonwealth v. Baumhammers*, 599 Pa. 1, 960 A.2d 59, 68 (2008)). In reviewing whether the evidence was sufficient to support a first-degree murder conviction or convictions, the entire trial record must be evaluated and all evidence considered. *Id.* In applying the above standards, we bear in mind that the Commonwealth may sustain its burden by means of wholly circumstantial evidence, and "the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence." *Commonwealth v. Cousar*, 593 Pa. 204, 928 A.2d 1025, 1032-1033 (2007).

*Commonwealth v. Sanchez*, 82 A.3d 943, 967 (Pa. 2013), *cert. denied*, 135 S.Ct. 154 (2014).

Here, appellant avers that the Commonwealth has failed to present sufficient evidence of the second and third elements to warrant a

first-degree murder conviction. Specifically, appellant claims that the Commonwealth failed to establish beyond a reasonable doubt that appellant was involved in the shooting, and even if the Commonwealth had met its burden in proving appellant's involvement in the shooting, the Commonwealth failed to prove that appellant acted with the specific intent to kill, as both the statute and our cases require. (**See** appellant's brief at 16, 21.)

We will first address the Commonwealth's evidence that identified appellant as the shooter. The Commonwealth presented testimony from Andre Richardson, in which Richardson identified appellant as the shooter. (Notes of testimony, 2/10/15 at 63.) The Commonwealth also introduced a statement that Domonte Dark gave to the Philadelphia Police, which also indicated that appellant was the shooter. (**Id.** at 142.) As noted above, the finder-of-fact is free to believe all, some, or none of the evidence presented; and the fact-finder is free to make its own credibility determinations. **See Estepp**, 17 A.3d at 943-944. Here, by convicting appellant, the jury found Richardson's testimony and Dark's statement to the police to be credible. There is support in the record for these factual findings and credibility determinations; therefore, it is outside of our purview to substitute our own judgment for that of the fact-finder. As a result, the Commonwealth has sufficiently proven beyond a reasonable doubt that appellant was identified as the shooter in this case.

In order to obtain a first-degree murder conviction, the Commonwealth must also sufficiently prove that appellant acted with malice and the specific intent to kill. We have previously defined malice as follows:

> Malice is defined as: wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured[.] Malice may be found where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury. Malice may be inferred by considering the totality of the circumstances.

**Commonwealth v. Thompson**, 106 A.3d 742, 757 (Pa.Super. 2014), quoting **Commonwealth v. Dunphy**, 20 A.3d 1215, 1219 (Pa.Super. 2011) (citation omitted).

As the trial court noted, appellant acted with requisite malice and specific intent to kill during the shooting.

> In the present case, there were multiple witnesses who identified [appellant] as the shooter, and the facts laid out by the Commonwealth clearly show that [appellant's] actions were intentional. [Appellant] skulked around the corner, pulled out his gun and started shooting at his prey across the street. [Appellant] deliberately stalked his victims in an attempt to ambush them. [Appellant] then rushed the street, blasting away at unarmed and unaware victims. This was a premeditated attack with a deadly weapon.

Trial court opinion, 6/19/15 at 6. We therefore find that the record supports the jury's finding that appellant acted with the requisite malice and specific

intent to kill and that the Commonwealth has sufficiently proven all three elements to warrant a first-degree murder conviction.

We next turn to appellant's aggravated assault conviction. The statute defines aggravated assault as follows:

> **(a) Offense defined.--**A person is guilty of aggravated assault if he:
>
> . . . .
>
> (4)    attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon

18 Pa.C.S.A. § 2702(a)(4).

Based upon the facts and circumstances noted above, where we determined that the Commonwealth presented sufficient evidence to justify a conviction of first-degree murder, we adopt the relevant portion of the trial court's opinion in which it found that the Commonwealth also produced sufficient evidence to warrant an aggravated assault conviction.

> Likewise, it is crystal clear that the Commonwealth presented sufficient evidence to sustain the charge of aggravated assault. The trial testimony incontrovertibly shows that Domonte Dark was the intended victim of this attack. It was Mr. Dark that [appellant] intended to kill and at whom [appellant] was shooting. . . . The record clearly establishes that [appellant's] conduct was intentional and by shooting at Domonte Dark, he is guilty of the crime of aggravated assault. Accordingly, this claim of insufficiency must fail.

Trial court opinion, 6/19/15 at 6-7.

- 9 -

Finally, appellant challenges the sufficiency of the evidence for his convictions of a violation of the Uniform Firearms Act and possession of an instrument of crime. Appellant's entire argument for these two convictions is as follows:

> Finally, the Commonwealth failed to prove beyond a reasonable doubt that the appellant possessed or used a weapon to sustain the conviction for violating the Uniform Firearms Act and for possessing instruments of crime.

Appellant's brief at 27. Bald statements of insufficiency in which no statute, case law, or evidence is cited will be deemed waived for the purposes of appeal. Pa.R.A.P. 2119(b-c). *See also Commonwealth v. Janda*, 14 A.3d 147, 164 (Pa.Super. 2011); *Commonwealth v. Natividad*, 938 A.2d 310, 340 (Pa. 2007). Therefore, appellant's claims regarding the sufficiency of the evidence for his convictions of VUFA and PIC are waived.

In his second issue, appellant avers that the trial court erred in failing to declare a mistrial after Philadelphia Police Detective Edward Tolliver read a portion of a statement he had taken from Andre Richardson that the trial court had previously declared inadmissible. (*See* appellant's brief at 28.)

> With regard to the denial of mistrials, the following standards govern our review:
>
> > In criminal trials, the declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to

> convene, declaration of a mistrial serves not only the defendant's interests but, equally important, the public's interest in fair trial designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, . . . assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion.

*Commonwealth v. Hogentogler*, 53 A.3d 866, 877-878 (Pa.Super. 2012), *appeal denied*, 69 A.3d 600 (Pa. 2013) (citations omitted). "The remedy of a mistrial is an extreme remedy required 'only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal.'" *Id.* at 878 (citations omitted). When the trial court provides cautionary instructions to the jury in the event the defense raises a motion for a mistrial, "[t]he law presumes that the jury will follow the instructions of the court." *Commonwealth v. Brown*, 786 A.2d 961, 971 (Pa. 2001) (citation omitted), *cert. denied*, 537 U.S. 1187 (2003).

In the instant case, appellant requested a mistrial after the following statement that Richardson gave to the police was read into the record at trial:

> **QUESTION**: "Do you know why Quiz came around there shooting?"

> **ANSWER**: "It was over some he say/she say stuff that was going back and forth. It had something to do with Kelsey Dark whose [sic] Domonte's brother stealing some money or something when Quiz was in jail.

Notes of testimony, 2/11/15 at 69. After sustaining the defense's objection on the basis of hearsay, the trial court read the following curative instruction to the jury:

> Ladies and gentlemen, I want you to ignore and strike from your memory the statement that was just made. It had to do with hearsay from somebody else, something he said/she said. That is not admissible testimony. I will ask you not to consider it and strike it from your memory.

*Id.* at 73.[3]

As noted above, the jury is presumed to have followed the trial court's curative instruction. As noted by the trial court, the record does not provide any indication that the jury "did not follow the [trial] court's instruction to disregard the evidence. As such a mistrial was unnecessary." (Trial court opinion, 6/19/15 at 8.) We, therefore, find that the trial court did not abuse its discretion by denying appellant's motion for a mistrial.

Judgment of sentence affirmed.

---

[3] Appellant appears to raise an objection as to the hearsay nature of the statement in addition to the reference to appellant being incarcerated. The trial court's curative instruction to the jury satisfactorily addresses both.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/15/2016