J-S45036-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIC C. ERNST | : | |
| | : | |
| Appellant | : | No. 430 EDA 2020 |

Appeal from the Judgment of Sentence Entered October 18, 2019
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0000773-2019,
CP-48-CR-0000798-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIC C. ERNST | : | |
| | : | |
| Appellant | : | No. 431 EDA 2020 |

Appeal from the Judgment of Sentence Entered October 18, 2019
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0000773-2019,
CP-48-CR-0000798-2019

BEFORE: BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.: **FILED NOVEMBER 3, 2020**

In these consolidated appeals, Eric C. Ernst (Appellant) appeals from

the judgment of sentence entered after a jury convicted him of two counts

each of simple assault and harassment (the assault crimes).[1] After careful review, we affirm.

In January 2019, Appellant resided in the home of Jessica Ernst (Jessica) and her family in Northampton County. Jessica's three children, E.E. (age 13), P.P. (age 10), and P.K. (age 3) lived in the home, along with Jessica's fiancée. Appellant's convictions arise from two separate incidents; the trial court described the first:

> At trial, [E.E.] testified as to the incident of assault that Appellant committed on her sister, [P.K.], on or about January 10, 2019. [E.E.] stated that she and [P.K.] were playing with their dog, Roscoe, in the lower-level family room of her house …. This lower level of the house was also where Appellant's bedroom was located, and Appellant was with [E.E.] and [P.K.] while they were playing. At this time, [E.E.] and Roscoe were located on the couch; Appellant was sitting in his recliner, watching television; and [P.K.] was running around the room, laughing and yelling. [E.E.] testified that Appellant was telling her and [P.K.] to "shut up and go upstairs." As [P.K.] was running around Appellant's recliner, [E.E.] testified that Appellant swiveled the recliner, stood up and started screaming. He then took his hand and pushed [P.K.] near her shoulder towards a coal stove, which was located approximately four feet away from the recliner, and which was lit at the time.

> This coal stove was the means by which the family heated their entire house, and it was lit on the evening in question because it was during the month of January and cold outside. [E.E.] testified that Appellant knew that the coal stove was lit, not only because it was heating the house in January, but also because he was the one tending to it. Further, the door on the coal stove is glass, and the hot coals are visible through the glass. [E.E.] testified that when she saw Appellant push [P.K.], she saw [P.K.'s] right leg slip under the stove, between the legs of the stove. When that happened, [E.E.] heard [P.K.] begin crying and

---

[1] 18 Pa.C.S.A. §§ 2701(a)(1), 2709(a)(1).

screaming and saw that [P.K.] was trying to get up and pull her leg out from under the stove. When [E.E.] was able to grab [P.K.], Appellant sat back down in his recliner and told [E.E.] and [P.K.] to go away. [E.E.] rushed upstairs with [P.K.] to [P.K.'s] bedroom and tried to calm her down. [E.E.] stated: "She started calming down and stopped crying, she told me that [he] hurt her and I told her that I'm sorry. I was trying to sit with her by holding her trying to calm her down." [E.E.] testified that Appellant did not try to help [P.K.] following this incident. The following day, [E.E.] saw a burn mark around [P.K.'s] right ankle, stating that it was hurting [P.K.] and getting puffy and bright red. Jessica and [her fiancée] also testified that, on the day following this assault, they observed a burn mark on the inside of [P.K.'s] lower right leg which was not there the day prior.

Trial Court Opinion, 4/16/20, at 28-29 (citations to record omitted).

A few days later, Appellant assaulted Jessica. The trial court stated:

At trial, [E.E.] testified … that her parents were arguing with Appellant about the house and bills and that she saw Appellant walk past Jessica and take his left elbow and hit Jessica in the mouth. Jessica also testified regarding this incident. Jessica testified that [her fiancée] and Appellant were engaged in a heated argument over money and bills in the downstairs of the house. Jessica went downstairs when the argument became more heated, and as she was standing at the bottom of the stairs, Appellant walked past her, threw up his left elbow and hit her in her lower lip. After Appellant hit her, she fell backwards into the door, scrambled up the steps and ran to the bathroom [along with E.E., and they called 911.] … [A]s a result of Appellant elbowing [Jessica] in the lip, she sustained a busted lip, which immediately caused blood to gush out onto her face and all over her shirt.

*Id.* at 27 (citations omitted).

Shortly after these incidents, the Commonwealth charged Appellant with the assault crimes, **at two separate criminal informations**: one pertaining to the incident on January 10, 2019, and the other concerning Appellant's assault of Jessica on January 13, 2019. The trial court docketed these charges

at CP-48-CR-0000773-2019 (Case 773), and CP-48-CR-0000798-2019 (Case 798).

On July 25, 2019, the Commonwealth filed identical notices at each case of its intent to present evidence of Appellant's prior bad acts at trial, pursuant to Pennsylvania Rule of Evidence 404(b) (Rule 404(b) motions). The Commonwealth sought to introduce evidence of Appellant's prior physical and verbal abuse of Jessica, P.K., E.E., and P.P. The Commonwealth asserted that this evidence was admissible to establish Appellant's common scheme/history of abusing family members in the household, and that its probative value outweighed any prejudice to Appellant. Appellant filed responses in opposition to the Rule 404(b) motions.

The Commonwealth also separately filed identical motions to join Case 773 and Case 798 (motions to join), asserting that evidence of Appellant's respective crimes against Jessica and P.K. would be admissible in a separate trial for the other.

By separate orders entered on August 2, 2019, the trial court granted the Rule 404(b) motions and motions to join.

The matter proceeded to a jury trial. Jessica and E.E. (among others) testified about Appellant's abusive behavior on January 10 and 13, 2019. E.E. testified, *inter alia*, that Appellant had abused her physically and verbally prior to the charged incidents. Appellant testified in his defense that he never assaulted Jessica or P.K., and maintained their respective burn and lip injuries

were accidentally self-inflicted. Prior to deliberations, the trial court issued various instructions to the jury, one of which pertained to Rule 404(b) evidence. The jury found Appellant guilty of all counts.

The trial court sentenced Appellant on October 18, 2019. At Case 773, Appellant received an aggregate sentence of one year of probation. At Case 798, he received an aggregate sentence of 18 months of probation. The court ordered the sentences to run concurrently. Appellant then filed separate notices of appeal,[2] after his direct appeal rights were reinstated *nunc pro tunc*, followed by court-ordered Pa.R.A.P. 1925(b) concise statements of errors complained of on appeal.

Appellant presents two issues for our review:

1. Did the Trial Court err in permitting the two informations to be tried together?

2. Did the Trial Court err in permitting . . . E.E. to testify about Appellant's alleged prior abusive behavior towards her?

_____

[2] The captions of the respective notices of appeal listed the docket numbers for **both** Case 773 and Case 798, which implicated the decision of our Supreme Court in **Commonwealth v. Walker**, 185 A.3d 969, 971 (Pa. 2018) ("prospectively, where a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each case," and failure to do so requires quashal of the appeal); **see also** Pa.R.A.P. 341, Official Note. However, an *en banc* panel of this Court recently clarified the law under **Walker** and its progeny where a notice of appeal contains more than one docket number. **See Commonwealth v. Johnson**, 2020 PA Super 164, at *16 (Pa. Super. 2020) (*en banc*) (where, as here, an appellant files a separate notice of appeal at each trial court docket, the "fact that each notice of appeal listed [more than one trial court docket number] does not invalidate [the] notices of appeal"). Therefore, although Appellant's separate notices of appeal listed more than one docket number, the notices of appeal do not run afoul of **Walker**.

Appellant's Brief at 5.

Appellant first argues the trial court abused its discretion in joining Case 773 and Case 798 for trial, where joinder unduly prejudiced him and deprived him of a fair trial. *See id.* at 9-13. According to Appellant, "the Commonwealth offered the injury of a different individual, P.K., as proof that [Appellant] assaulted Jessica, which assault was itself offered as proof that [Appellant] had assaulted P.K., all in an impressive feat of Mobius strip-like bootstrapping." *Id.* at 11. Appellant further argues, "[a]side from the fact that [Appellant] was charged with the same offenses in both cases, there [was] nothing about the factual basis of the charges that demonstrated any 'signature' style of assaulting on the part of [Appellant]." *Id.* at 13.

We are mindful of our standard of review:

> The general policy of the laws is to encourage joinder of offenses and consolidation of indictments when judicial economy can thereby be effected, especially when the result will be to avoid the expensive and time consuming duplication of evidence. Whether to join or sever offenses for trial is within the trial court's discretion and will not be reversed on appeal absent a manifest abuse thereof, or prejudice and clear injustice to the defendant.

*Johnson*, 2020 PA Super 164, at *16 (citations omitted). In determining whether the trial court abused its discretion, this Court must "weigh the possibility of prejudice and injustice caused by the consolidation against the consideration of judicial economy." *Commonwealth v. Janda*, 14 A.3d 147, 155-56 (Pa. Super. 2011) (citation omitted).

Pursuant to Pa.R.Crim.P. 582, distinct offenses which do not arise out of the same act or transaction may be tried together if (a) "the evidence of each of the offenses would be admissible in a separate trial for the other, and is capable of separation by the jury so that there is no danger of confusion; or (b) the offenses charged are based on the same act or transaction." Pa.R.Crim.P. 582(A)(1)(a)-(b); **see also Commonwealth v. Knoble**, 188 A.3d 1199, 1205 (Pa. Super. 2018). In applying this Rule, "[i]f the trial court finds that the evidence is admissible and the jury can separate the charges, the court must also consider whether consolidation would unduly prejudice the defendant." **Commonwealth v. Lively**, 231 A.3d 1003, 1006 (Pa. Super. 2020) (citation omitted); **see also** Pa.R.Crim.P. 583. In determining whether these standards have been met,[3] an analysis of Pa.R.E. 404(b) is necessary. **See Janda**, 14 A.3d at 156 (stating that standards governing admission of prior bad acts evidence apply when informations are consolidated for trial, and the analyses are related).

Under Rule 404(b), evidence of other bad acts or crimes, while generally not admissible to prove bad character or criminal propensity, can be admissible to show, *inter alia*, a common scheme or lack of accident, where the probative value of such evidence outweighs its potential for unfair prejudice. Pa.R.E. 404(b)(2). "'Unfair prejudice' means a tendency to

---

[3] We collectively refer to the requirements set forth in Pa.R.Crim.P. 582(A)(1), **supra**, and **Lively**, **supra**, as "the three-prong joinder test."

- 7 -

suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." ***Commonwealth v. Dillon***, 925 A.2d 131, 141 (Pa. 2007) (quoting Pa.R.E. 403, Comment). A trial court is not "required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." ***Commonwealth v. Hairston***, 84 A.3d 657, 666 (Pa. 2014). Finally, when "examining the potential for undue prejudice, a cautionary jury instruction may ameliorate the prejudicial effect of the proffered evidence. … Jurors are presumed to follow the trial court's instructions." ***Id.*** (citation omitted).

The Rule 404(b) exceptions implicated in the instant case are the "common scheme," *res gestae*, and "lack of accident" exceptions. To determine whether the common scheme exception applies, the trial court must examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive as to become the signature of the same perpetrator. ***Commonwealth v. Ivy***, 146 A.3d 241, 253 (Pa. Super. 2016) (explaining that the circumstances of the crimes need not be identical, but there must be a "logical connection between them"); ***see also id.*** at 252 ("[e]vidence of prior abuse between a defendant and an abused victim is generally admissible to establish motive, intent, malice, or ill-will."). Under the *res gestae*

exception, evidence of prior bad acts may be admitted "where it became part of the history of the case and formed part of the natural development of facts." *Id.* at 251.

Turning to the three-prong joinder test, we must first determine whether evidence of Appellant's respective crimes against Jessica and P.K. would be admissible in separate trials for the other.[4] *See* Pa.R.Crim.P. 582(A)(1)(a), *supra*.

Here, the trial court determined that (1) the evidence of Appellant's crimes against Jessica and P.K. was admissible and met the first prong of the three-prong joinder test; and (2) the court properly admitted E.E.'s testimony about Appellant's prior abuse under Rule 404(b):

> Importantly, in both incidents of assault [in this case], Appellant claimed that they resulted from accidental occurrences. In [P.K.'s] case, the facts provided in the Commonwealth's pretrial motions indicated that Appellant blamed [P.K.'s] injury on the family's energetic dog causing [P.K.] to be shoved under the coal stove,[FN] and in Jessica's case, Appellant claimed that Jessica tripped over a cord and hit her lip on a door frame. The incident involving [P.K.] occurred within the same household, just two days prior to the assault on Jessica. Therefore, the assaults were

_____

[4] In Appellant's second issue, he challenges the trial court's admission of the evidence regarding Appellant's prior uncharged abuse of E.E., a key Commonwealth witness at Appellant's trial. *See* Appellant's Brief at 15-16 (asserting "the mere occurrence of abusive behavior towards E.E. is not sufficient to show a common scheme or lack of accident in regards to the offenses charged against [Appellant] with respect to Jessica and P.K. [and] the prejudicial effect of the evidence of [Appellant's] past abusive behavior toward E.E. far outweighed any relevance it may have had."). The admissibility of this evidence is closely related to the admissibility inquiry under the first prong of the three-prong joinder test. *See Janda*, *supra*. Therefore, we address these issues simultaneously.

closely linked temporally and geographically, and the victims were both in a filial relationship with Appellant.

[FN] We note that at trial, Appellant testified that [P.K.] actually sustained a burn during the day on January 7, 2019, while he was out of the house. Appellant testified that he … did not come back to the house until about 7 p.m. that evening.

With regard to the prior instance of abuse between Appellant and [P.K.], the evidence was admissible in Jessica's case to show absence of mistake, to establish a common scheme, and to complete the story and explain the historically hostile family relationship. Also, as to the evidence of abuse against Jessica, that evidence was admissible in [P.K.'s] case to show absence of mistake, to establish a common scheme, and to complete the story. This is due, *inter alia*, to the proximity of the assaults to one another and their occurrences taking place in the same family home. Furthermore, even if the evidence was not admissible as an exception under 404(b)(2), it was admissible as *res gestae*. ***See Ivy***, 146 A.3d [at] 251.

The specific prior physical and verbal abuse of E.E. … that the Commonwealth sought to introduce as 404(b) evidence was the following: 1) evidence regarding an incident in December of 2018 when Appellant threw a cup of cold coffee in E[.E.'s] face; 2) evidence regarding an incident when Appellant smothered E[.E.'s] face with a chair cushion; 3) evidence that Appellant threw dishes and shoes at E[.E.]; 4) evidence that Appellant called E[.E.] derogatory names, including "fat bitch," "lazy bitch," and "cunt"; and 5) evidence that Appellant pushed E[.E.] against a wall and down a set of stairs. With regard to these prior instances of abuse between Appellant and E[.E.], the evidence was admissible to explain any delay on the part of E[.E.] in reporting her knowledge of Appellant's acts of abuse against [P.K.], as well as to demonstrate her state of mind and the basis of her fear of Appellant. But for this evidence, Appellant may have argued that a lack of immediate action by E[.E.] following the January 10, 2019 incident suggested that the incident never occurred. This evidence was not proffered to show criminal propensity, but it was relevant to negate any anticipated delayed reporting defense and explain why E[.E.] may have been afraid of Appellant and afraid to immediately report/confront him. ***See Commonwealth v. Cook***, 952 A.2d 594, 621 (Pa. 2008) (evidence that a female witness was afraid of the defendant "because [of] the things that

- 10 -

he used to do to his girlfriends," *e.g.*, "he used to hurt them pretty bad," was admissible as prior bad act evidence to explain why the witness did not come forward earlier to report to police her knowledge of the defendant's involvement in a murder.)

This evidence was also admissible to establish a common scheme and lack of accident. In **Commonwealth v. Golphin**, 161 A.3d 1009 (Pa. Super. 2017), the Superior Court addressed the common scheme or plan and lack of accident exception. In **Golphin**, the defendant was convicted of several crimes following the death of four-year-old victim S.B. The defendant appealed the trial court's ruling allowing prior bad acts evidence of prior abuse against S.B. and the other children in the house, A.G. and Sean [B]. The **Golphin** Court held that the prior bad acts involving the siblings were sufficiently similar to fall under the common plan, scheme, or design and lack of accident exception. The Superior Court agreed with the trial court's following explanation for admitting the other acts evidence at issue:

> As to the evidence of prior acts of abuse towards A.G. and Sean [B.], the evidence was admissible both to show Appellant's absence of mistake in causing S.B.'s death, as well as to show a common scheme or plan. In all three instances, the victim was a young child in a filial relationship with Appellant that Appellant punched, scratched and/or hit. Furthermore, the instances of abuse towards all three children took place close in time with one another.

***Id.*** at 1021-1022 (internal citations omitted).

Similarly, in the instant case, the prior bad acts involving E[.E.] were sufficiently similar to the offenses against [P.K.] such that they fell under the common plan or scheme exception and the lack of accident exception. Both E[.E.] and [P.K.] are minor females, and they are both Jessica's children. They are both [related to] Appellant . . . resided in the same home with him. The alleged abuse of E[.E.] and the abuse of [P.K.] took place within the two years that Appellant resided with them. The incidents of abuse took place within the same home and involved both verbal and physical assault. Specifically, shoving and pushing on the part of Appellant was alleged to have taken place against E[.E.] and [P.K]. For these reasons that evidence of prior bad acts against

E[.E.] was admissible, this [c]ourt did not abuse its discretion in admitting same.

\* \* \*

Next, the prior physical and verbal abuse of [P.K.] that the Commonwealth sought to introduce as 404(b) evidence was the January 10, 2019 assault on [P.K.], which incident was the basis for the charges filed in [Case] 798. The Commonwealth also sought to introduce other prior bad acts evidence of Appellant, including his calling [P.K.] "a little bastard," telling her "to get out of his face and to leave him alone and to get away from him," as well as evidence of Appellant previously pushing and shoving her. This evidence was admissible to establish the chain of events and pattern of abuse against [P.K.], as well as to show Appellant's intent and malice toward [P.K]. *See Commonwealth v. Powell*, 956 A.2d 406[, 420] (Pa. 2008) (where evidence that the defendant threw a glass of water in his son's face was admissible to demonstrate the defendant's temper, anger, impatience, and dislike of the child so as to establish motive and intent to commit the various crimes against the child, as well as the nature of the relationship)[; *see also Commonwealth v. Hicks*, 156 A.3d 1114, 1128 (Pa. 2018) (holding 404(b) evidence of defendant's prior assaults of 8 prostitutes was admissible to prove, *inter alia*, a common scheme, where the prior assaults were similar and logically connected to the assault and murder of the victim at bar, and the probative value of the evidence outweighed the prejudice to defendant); *Commonwealth v. Luktisch*, 680 A.2d 877, 879 (Pa. Super. 1996) (trial court did not abuse its discretion when admitting evidence of defendant's prior sexual abuse upon other children in the same family relevant to demonstrate a common scheme)]. The prior physical abuse, together with the verbal abuse against [P.K.] provides insight into the relationship Appellant had with [P.K.], which was characterized by Appellant's quick temper, anger, and impatience with the characteristics and developmental level of a small child. It also helped to establish Appellant's motive in pushing [P.K.] into the coal stove, which was his impatience with [P.K.]. For these reasons, … we submit that this [c]ourt did not err in admitting into evidence other acts of abuse by Appellant against [P.K.]

The prior physical and verbal abuse of Jessica that the Commonwealth sought to introduce as 404(b) evidence was evidence that Appellant threatened to burn down the family's

house so that they would have to live in a shelter, and evidence of the assault on Jessica that took place on January 13, 2019. As stated above, the evidence of the January 13, 2019 assault was admissible to demonstrate lack of accident or mistake and/or a common scheme. In its pretrial submissions, the Commonwealth noted that Appellant represented to law enforcement and Children and Youth caseworkers that he did not commit the assault against either victim; rather, the facts presented therein indicate that Appellant maintained that the family's dog pushed [P.K.] into the stove and that Jessica somehow caused the injuries to her own face by hitting it off of a doorknob[.] Based on these assertions of Appellant, evidence of the January 13, 2019 assault on Jessica was relevant and admissible in [P.K.'s] case to demonstrate a lack of accident or mistake and/or a common scheme. Regarding evidence that Appellant threatened to burn down the family's house so that they would have to live in a shelter, Appellant was not prejudiced by this [c]ourt's ruling allowing introduction of same because no such testimony was actually elicited by the Commonwealth at trial. Nevertheless, this evidence would have been admissible to complete the story so as to explain the severity of Appellant's hostile thoughts and actions towards the family, to justify Jessica's fear of Appellant, and to explain why Jessica sought a protection from abuse order.

Trial Court Opinion, 4/16/20, at 7-8, 10-14 (footnote in original, citations modified, some capitalization and citations omitted).

Our review of the record and prevailing law supports the trial court's comprehensive analysis. We conclude the Commonwealth met the first prong of the three-prong joinder test, and the bad act evidence of abuse was admissible under the relevant exceptions to Rule 404(b). Thus, we must next determine whether the trial court was correct in concluding that the remaining two prongs of the three-prong joinder test were met. The court explained:

The second issue this [c]ourt had to determine in deciding whether to consolidate the criminal informations is whether the jury could separate the evidence of the crimes so as to avoid the danger of

confusion.   [**See** Pa.R.Crim.P. 582(A)(1)(a).]   This [c]ourt determined they could.  The assaults took place on different days and in different areas of the family home.  They resulted in injuries that were caused in a different manner and on a separate part of the body.  Further, the assaults featured victims who were easily distinguishable, as one was a three-year-old child and the other was her mother.  The testimony offered regarding the assaults was not overlapping or confusing, but the witnesses spoke about two different events at two separate times and locations within the home.  The witnesses were presented in a clear, logical order when giving testimony.  Thus, the risk that the jury would confuse the issues was minimal.

Finally, the third issue this [c]ourt had to determine was whether . . . Appellant would have been unduly prejudiced by the consolidation of the offenses.  [**See Lively**, **supra**.]  Based upon the determinations discussed **supra**, we found the risk of prejudice to be minimal.[5]  Therefore, joinder of Appellant's two criminal informations, which were clearly interrelated, was proper.  Not only would the evidence of each of the offenses be admissible in a separate trial for the other, but the jury was also capable of separating the evidence so as to avoid confusion. As such, this [c]ourt did not abuse its discretion in consolidating [Appellant's] charges for trial.

Trial Court Opinion, 4/16/20, at 8-9 (footnote added).

Again, the trial court's rationale is supported by both the record and law.

Indeed, jointly trying Case 773 and Case 798 was appropriate under the

circumstances.  **See, e.g., Johnson**, **supra** (emphasizing policy to encourage

joinder, especially where "the result will be to avoid the expensive and time

---

[5] We agree with the trial court's prejudice determination and underscore the court's cautionary instruction to the jury, explaining the limited purpose for which the jury could consider the bad act evidence.  **See** N.T., 12/6/19, at 223-24.  This ameliorated any undue prejudice to Appellant.  **See Hairston**, **supra**.

consuming duplication of evidence."). Finally, even if separately trying Case 773 and Case 798 was appropriate, justice would not be served by requiring Jessica and E.E. to present duplicate testimony at two separate trials.[6]

Accordingly, both of Appellant's claims fail because the trial court properly exercised its discretion in granting the Rule 404(b) and joinder motions.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/03/2020

_____

[6] Jessica stated that Appellant's crimes, as well as the stress associated with her family being involved in a criminal trial, have traumatized her, P.K., E.E., and P.P. **See** Commonwealth's Sentencing Memorandum, 10/11/19, Appendix B (Jessica stating in victim impact statement that Appellant's abuse psychologically and physically "scarred" the family, and "we gave statement after statement, [which forced] us to relive the events of your crimes over and over again.").