J-S12024-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DARRYL JONES | : | |
| | : | |
| Appellant | : | No. 925 EDA 2021 |

Appeal from the Judgment of Sentence Entered November 1, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0016321-2008

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DARRYL JONES | : | |
| | : | |
| Appellant | : | No. 926 EDA 2021 |

Appeal from the Judgment of Sentence Entered November 1, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001994-2009

BEFORE: BENDER, P.J.E., BOWES, J., and DUBOW, J.

MEMORANDUM BY BOWES, J.: **FILED JULY 15, 2022**

Darryl Jones appeals *nunc pro tunc* from his November 1, 2016 judgment of sentence of twenty-five to fifty years of incarceration, followed by forty-eight years of probation, imposed in the above-captioned cases after

a jury convicted him of four counts of robbery and one count each of unlawful possession of a firearm and possessing an instrument of crime..[1]  We affirm.

This Court previously summarized the history of these cases as follows:

> At approximately 6:30 p.m. on November 2, 2008, Appellant committed an armed robbery of Patricia Cassidy and her boyfriend, Chris Gaglione, taking both victims' wallets.  Several hours later, at around 10:35 p.m., Appellant committed another armed robbery of brothers Christian and Michael Pekula, taking both men's wallets and Christian's cell phone.  After the robbery, Christian Pekula called the police and provided a description of Appellant.
>
> Around midnight, two Philadelphia Police Officers, who were patrolling in the area, spotted Appellant and believed he matched the description of the armed robber.  As the officers drove their marked police car past Appellant, one of the officers observed Appellant discard something that "appeared to be a firearm."  The officers stopped and exited their vehicle, and as one officer went to secure the weapon, the other officer approached Appellant and asked for identification.  Appellant pulled out a wallet and the officer "noticed a bunch of IDs for white males."  Appellant, a black man, could not explain why he had identification cards for white males.
>
> At that point, the officer "went to secure Appellant for the investigation, because of the firearm on the ground and the IDs," and Appellant "began swinging at the officer."  Both officers ultimately forced Appellant to the ground and placed him under arrest.  Shortly thereafter, Christian Pekula was brought to the

_____

[1] Appellant purported to appeal from his original July 20, 2012 judgment of sentence rather than the November 1, 2016 resentencing that occurred after this Court vacated the 2012 sentence, presumably because, as we discuss further *infra*, he was granted leave to challenge his underlying convictions rather than the later resentencing.  While Appellant's appeal does properly lie from a judgment of sentence, one cannot appeal from a vacated order.  ***See***, ***e.g.***, ***Kuppel v. Auman***, 529 A.2d 29, 31 (Pa.Super. 1987) (indicating order vacated by this Court in prior appeal ceased to exist).  Accordingly, we have amended the caption to reflect the only extant judgment of sentence in these cases.

scene of Appellant's arrest and Pekula immediately identified Appellant as the man who had robbed him. Due to cuts on Appellant's face that he sustained when he resisted arrest, he was transported to the hospital, where Patricia Cassidy also positively identified Appellant. Additionally, at trial, Christian Pekula, Patricia Cassidy, and Chris Gaglione all identified Appellant as the individual who robbed them at gunpoint.

On September 29, 2011, at the close of his jury trial, Appellant was convicted of, *inter alia*, four counts of robbery, one count of unlawful possession of a firearm, and one count of possessing an instrument of crime. On July 20, 2012, Appellant was sentenced to an aggregate term of 25 to 50 years' incarceration, which included three mandatory minimum terms of 5 years' incarceration pursuant to 42 Pa.C.S. § 9712 (Sentences for offenses committed with firearms). The court also imposed an aggregate term of 53 years' probation, to be served consecutively to Appellant's sentence of incarceration.

Appellant proceeded *pro se* on appeal to this Court after we remanded to the trial court for a hearing pursuant to ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998). Several additional remands were necessary, delaying this Court's consideration of Appellant's issues. Ultimately, we affirmed Appellant's convictions, finding his challenges thereto meritless or waived. [Among the claims we found to be waived were that the trial court erred in denying his suppression motion.] However, we vacated his sentences as illegal under ***Alleyne v. United States***, 570 U.S. 99 (2013), and its progeny, and remanded for resentencing without consideration of any mandatory minimum sentences.

On November 1, 2016, Appellant was resentenced as indicated above. . . .

***Commonwealth v. Jones***, 227 A.3d 402 (Pa.Super. 2020) (non-precedential decision at 2-3) (cleaned up).

Appellant did not file a timely direct appeal from his 2016 judgment of sentence. He thereafter timely filed a PCRA petition seeking reinstatement of his rights to appeal from the new judgment of sentence, as well as raising

claims of ineffective assistance of counsel in, *inter alia*, failing to contest the adequacy of the ***Grazier*** hearing conducted during his first direct appeal. The PCRA court granted Appellant the right to appeal the 2016 sentence *nunc pro tunc* and did not address the merits of Appellant's other PCRA claims.

In this Court, Appellant challenged the discretionary aspects of his 2016 sentence, as well as the trial court's ***Grazier*** ruling. We affirmed the judgment of sentence and did not reach the issue concerning the sufficiency of Appellant's waiver of his right to counsel in his initial direct appeal. Specifically, while we noted that the Commonwealth conceded that Appellant's ***Grazier*** hearing was deficient, Appellant acknowledged that the issue was beyond the scope of the appeal, which was limited to challenging the 2016 sentence. ***See Jones***, ***supra*** (non-precedential decision at 8-9) (citing, *inter alia*, ***Commonwealth v. Williams***, 151 A.3d 621, 625 (Pa.Super. 2016)). We observed that the only avenue for Appellant to obtain relief on his ***Grazier***-related claim was "a collateral attack pursuant to the PCRA." ***Id***. (non-precedential decision at 9) (cleaned up).

Appellant promptly filed a *pro se* PCRA petition, counsel was appointed, and an amended petition was filed. Therein, Appellant alleged, *inter alia*, that counsel at the time of his direct appeal was ineffective for abandoning him at the ***Grazier*** hearing rather than assuring that Appellant made a knowing, intelligent, and voluntary waiver of his right to counsel. ***See*** Amended PCRA Petition, 10/29/20, at 6; Memorandum of Law, 10/29/20, at 21-22.

Accordingly, Appellant sought the reinstatement of his right to file a direct appeal raising new guilt-phase claims.

The Commonwealth filed an answer to the amended petition. Therein, it correctly observed that, when a first direct appeal results only in a remand for sentencing relief, the imposition of a new sentence does not reset the one-year clock for filing a PCRA petition challenging the underlying conviction. Rather, the judgment of sentence as to guilt-phase claims became final at the conclusion of the initial direct appeal for purposes of the PCRA. *See* Answer to PCRA Petition, 4/21/21, at 3 (citing ***Commonwealth v. Dehart***, 730 A.2d 991, 994 n.2 (Pa.Super. 1999)). However, the Commonwealth suggested that Appellant's petition satisfied the PCRA timeliness exception at 42 Pa.C.S. § 9545(b)(1)(i), in that, through allowing counsel to withdraw absent a proper ***Grazier*** hearing, the government, however inadvertently, interfered with Appellant's right to counsel on his direct appeal, and Appellant raised the claim at the first opportunity when he again had counsel. ***Id***. at 3-4. Further, the Commonwealth agreed that, because Appellant had been denied his constitutional right to pursue a counseled direct appeal challenging his convictions, he was entitled to relief in the form of reinstatement of his rights to do so. ***Id***. at 5.

The PCRA court agreed with the parties, and reinstated Appellant's direct appeal rights *nunc pro tunc*. ***See*** Order, 4/26/21. Appellant filed a timely

notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following questions for our review:

  I.    Whether the trial court erred in denying the suppression motion.

  II.   Whether the Commonwealth committed a ***Brady*** violation.

  III.  Whether the trial court erred in granting the Commonwealth's consolidation motion.

  IV.   Whether the trial court erred in not allowing the Appellant to confront a witness.

  V.    Whether the Commonwealth presented perjured testimony.

Appellant's brief at 4.

We begin with Appellant's suppression challenge. We consider this question mindful of the following standard of review:

> In reviewing appeals from an order denying suppression, our standard of review is limited to determining whether the trial court's factual findings are supported by the record and whether its legal conclusions drawn from those facts are correct. When reviewing the rulings of a trial court, the appellate court considers only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. When the record supports the findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. Our scope of review is limited to the evidence presented at the suppression hearing.

***Commonwealth v. Bellamy***, 252 A.3d 656, 663 (Pa.Super. 2021) (cleaned up).

Appellant contends that the out-of-court identifications of him made by Christian Pekula, Bernard Talmage, and Laura Dillingham should have been

suppressed because it was unduly suggestive, and that the subsequent in-court identification was tainted as a result. *See* Appellant's brief at 16. Consequently, the following principles apply:

> In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable. The purpose of a one on one identification is to enhance reliability by reducing the time elapsed after the commission of the crime. Suggestiveness in the identification process is but one factor to be considered in determining the admissibility of such evidence and will not warrant exclusion absent other factors. As this Court has explained, the following factors are to be considered in determining the propriety of admitting identification evidence: the opportunity of the witness to view the perpetrator at the time of the crime, the witness'[s] degree of attention, the accuracy of his prior description of the perpetrator, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation. The corrupting effect of the suggestive identification, if any, must be weighed against these factors. Absent some special element of unfairness, a prompt one on one identification is not so suggestive as to give rise to an irreparable likelihood of misidentification.

*In re K.A.T., Jr.*, 69 A.3d 691, 700-01 (Pa.Super. 2013) (cleaned up).

Appellant's specific complaints are as follows. As for witnesses Talmadge and Dillingham, Appellant sought suppression on the bases that their identifications took place while Appellant "was facially disfigured after his scuffle [with] police, he was surrounded by police[,] and was the lone suspect to be identified." Motion to Preclude Out-of-Court and In-Court Identification of the Defendant, 3/1/11, at ¶ 13. Regarding Pekula, Appellant similarly complained that "the identification took place approximately 2 hours after the

robbery," and that Appellant "was the lone suspect, in custody and surrounded by police."[2]  *Id*. at ¶ 14.

The trial court addressed Appellant's contentions as follows:

While all three of the stated identifications have suggestive elements, other factors exist which establish an independent origin for each witness.  Laura Dillingham made her identification of Appellant only six and a half hours after her robbery took place. In addition, shortly after the robbery took place, Dillingham gave the police a description of the assailant as being a male, around five eleven, dark complexion, and dark clothes.  Dillingham's robbery lasted several minutes with enough light from the surrounding streetlights to have a view of Appellant's face. Additionally, when Dillingham was brought into Appellant's room for identification, she was able to identify Appellant almost immediately as her assailant, with complete certainty and virtually no hesitation.

With regard to Bernard Talmadge, he gave a very detailed description of his assailant as a black male, thirty-five to forty-five years old, brown complexion, trim build, mustache, and around five eleven.  Talmadge's identification of Appellant took place only a few hours after the robbery occurred and was made by Talmadge with certainty.

Finally, Chris Pekula was able to give the most extensive description [of] his assailant as both he and his brother had attempted to tackle [Appellant] and resist the robbery.  Pekula described his assailant as a black male, around six foot, one hundred and fifty pounds, thin build, medium dark complexion, short black hair, unshaven, denim jacket, black jeans, black combat boots, and a knitted hat.  Chris Pekula was able to give the most accurate description of his assailant and the time delay between his robbery and the identification was the shortest among all of the witnesses in this matter.

_____

[2] We observe that the suggestiveness of Pekula's out-of-court identification was considered by this Court in Appellant's initial, *pro se* direct appeal. However, because the lack of a proper waiver of the right to counsel in effect undermined that appeal, we consider the issue anew now that Appellant has the benefit of counsel to present it.

- 8 -

Based on the totality of the circumstances, the various factors of each witness's identification are enough to establish an independent origin from any of the suggestive factors claimed by Appellant. Each witness had ample time to view their assailant during the commission of the robbery, each witness gave an accurate description of their assailant which matched Appellant, only a few hours separated the robberies and the identifications, and all three witnesses displayed absolute certainty at the time of the identification. Based on these facts, Appellant's claim is meritless.

Trial Court Opinion, 7/8/21, at 12-13 (citations omitted).

We discern no cause to disturb the trial court's ruling. Appellant's speculation that the individuals "could have been under duress during the encounter" and "could have been suffering from exhaustion" at the time of the identification, Appellant's brief at 17, fails to establish that the trial court's findings are unsupported by the record or that its legal conclusions are incorrect. The issue merits no relief.

Appellant next claims that the trial court erred in denying relief on his claims based upon *Brady v. United States*, 397 U.S. 742 (1969). "This issue presents a question of law, for which our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Bagnall*, 235 A.3d 1075, 1084 (Pa. 2020). Our Supreme Court summarized the law governing *Brady* claims as follows:

The law governing alleged *Brady* violations is well-settled. In *Brady*, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. The Supreme Court

- 9 -

subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused, and that the duty may encompass impeachment evidence as well as directly exculpatory evidence. Furthermore, the prosecution's *Brady* obligation extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution.

On the question of materiality, the Court has noted that such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. The materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions. Rather, the question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Thus, there are three necessary components that demonstrate a violation of the *Brady* strictures: the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued.

*Commonwealth v. Lambert*, 884 A.2d 848, 853-54 (Pa. 2005) (cleaned up).

Appellant argues *Brady* claims as to four items of evidence: (1) the affidavit of probable cause for Appellant's arrest; (2) Philadelphia police patrol activity logs; (3) the police incident history and flash report; and (4) the time sheets of the officers. *See* Appellant's brief at 18. Specifically, Appellant indicates that he was unable to review and argue the initial probable cause determination for his seizure and search because the prosecution withheld the affidavit of probable cause. *Id*. at 20. Further, he maintains that the missing evidence would have raised doubts about the officers' whereabouts during the investigation of the robberies, provided a more detailed timeline of events,

and could have been used to impeach the officers if they were not "in fact on duty when they said they were, on patrol where they said they were." ***Id***.

Upon review, we conclude that Appellant failed to establish a right to relief as to any of them. First, as the trial court observes in its opinion, an affidavit of probable cause is filed as a public record that was available to Appellant, and, therefore, was not ***Brady*** material. ***See*** Trial Court Opinion, 7/8/21, at 14. ***See also Commonwealth v. Benvenisti-Zarom***, 229 A.3d 14, 26 (Pa.Super. 2020) ("***Brady*** is not violated when the appellant knew or, with reasonable diligence, could have uncovered the evidence in question, or when the evidence was available to the defense from other sources." (cleaned up)).

Second, the patrol activity logs were not suppressed by the Commonwealth, but were lost before trial and not available to either party. ***See*** Trial Court Opinion, 7/8/21, at 15. Accordingly, the material was only possibly exculpatory and no ***Brady*** violation occurred because Appellant did not establish bad faith on the part of the Commonwealth. ***See***, ***e.g.***, ***Commonwealth v. Chamberlain***, 30 A.3d 381, 402 (Pa. 2011) ("Evidence that is possibly exculpatory is only merely potentially useful, the loss of which . . . creates a constitutional deprivation only if the Commonwealth acted in bad faith.").

Third, Appellant not only received the flash report and time sheets, but used them at trial, even marking one as a defense exhibit. ***See*** Trial Court

Opinion, 7/8/21, at 14-15 (citing N.T. Trial, 9/27/11, at 157, 191, 214, Exh. D-5). Hence, *Brady* is not implicated. *See Commonwealth v. Causey*, 833 A.2d 165, 170–71 (Pa.Super. 2003) (holding the defendant's "reliance on *Brady* [was] wholly misplaced" where "the evidence was not suppressed by the Commonwealth but was, in fact, disclosed during trial"). Rather, Appellant's complaint is of a discovery violation, which warrants no relief unless the defendant can establish prejudice, which Appellant does not here attempt to do. Consequently, Appellant's *Brady* claims fail.

Next, Appellant asserts that the trial court erred in granting the Commonwealth's motion to consolidate all four robberies into one case. The following legal principles apply to our review of this issue:

> It is well settled that the decision of whether to join or sever offenses for trial is within the discretion of the trial court, and such decision will not be reversed on appeal absent a manifest abuse of that discretion or a showing of prejudice and clear injustice to the defendant. The Pennsylvania Rules of Criminal Procedure provide that distinct offenses which do not arise out of the same act or transaction may be tried together if the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion.

*Commonwealth v. Stiles*, 143 A.3d 968, 975–76 (Pa.Super. 2016) (cleaned up). *See also* Pa.R.Crim.P. 582(A)(1) ("Offenses charged in separate indictments or informations may be tried together if: (a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion[.]").

It is axiomatic that "evidence concerning distinct crimes is inadmissible solely to demonstrate a defendant's bad character or his propensity to commit crimes[.]" *Id*. at 975-76. However, such evidence is properly admitted as proof of the following:

> (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial, in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other.

*Commonwealth v. Janda*, 14 A.3d 147, 156 (Pa.Super. 2011) (cleaned up).

Appellant concedes that "the time lapse between the crimes was just within a few hours, the robberies occurred in the same city, and the method of the crimes were all robberies at gunpoint." Appellant's brief at 23. He further acknowledges that the victims all offered similar descriptions of the perpetrator's clothing. *Id*. Nonetheless, he argues that "the four robberies were not connected in any way" to show intent, motive, a common plan, or a particular *modus operandi*. Instead, he maintains that these robberies were "similar to many robberies," and "[r]obberies during evening hours generally have the perpetrator wearing darker clothes to be harder to see, and it is not unusual for them to be armed." *Id*. at 22-23.

The trial court disagreed, concluding that consolidation was warranted because "the facts represented by each victim, coupled with the timing and locations of each robbery, creates such a high correlation in details that a

*modus operandi* is apparent." Trial Court Opinion, 7/8/21, at 16. The court highlighted that the robberies all took place on the same day, within a few hours of each other, all within a six-block radius. *Id*. All of the victims described the crimes as occurring when a slim, Black male close to six feet tall and wearing a dark hoodie and jeans approached them, showed a gun, demanded their wallets or money, then left. *Id*. Further, when Appellant was arrested, he had possession of the identification cards of victims of two of the robberies. *Id*.

While the method of the robberies does not contain peculiar details to make them signature crimes, we agree that the fact that they were committed in the same manner, however commonplace, within such a short time span and geographical area established "a logical connection between the crimes that proof of one . . . naturally tend[ed] to show that the accused [wa]s the person who committed the other." *Janda*, *supra* at 156. Indeed, this Court has affirmed consolidation of similar offenses committed with a significantly less temporal and geographical proximity. *See id*. at 156-57 (affirming consolidated trial of nine burglaries committed within a five-mile radius of each other over a four-month period); *Commonwealth v. Taylor*, 671 A.2d 235, 241 (Pa.Super. 1996) (affirming consolidation of three knife-point robberies that occurred within a thirty-four-day period where the victims offered similar descriptions of the perpetrator). Hence, Appellant has failed to convince us that the trial court abused its discretion, and no relief is due.

Appellant's next issue, which alleges a violation of his confrontation rights, presents questions of law "for which our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Brown*, 185 A.3d 316, 324 (Pa. 2018). We begin our review of this claim of error with an examination of the applicable authority.[3]

> The Confrontation Clause of the Sixth Amendment, made applicable to the States via the Fourteenth Amendment, provides that "in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him." In [*Crawford v. Washington*, 541 U.S. 36, 51 (2004)], the Court held that the Sixth Amendment guarantees a defendant's right to confront those "who bear testimony" against him, and defined "testimony" as "a solemn declaration or affirmation made for the purpose of establishing or proving some fact." The Confrontation Clause, the High Court explained, prohibits out-of-court testimonial statements by a witness unless the witness is unavailable and the defendant had a prior opportunity for cross-examination.

*Commonwealth v. Yohe*, 79 A.3d 520, 530-31 (Pa. 2013) (cleaned up).

Appellant contends that he never had the opportunity to cross-examine Michael Pekula, one of the victims he was convicted of robbing. *See* Appellant's brief at 24. Although Christian Pekula testified at trial concerning Appellant's robbery of both Pekula brothers, Appellant asserts that, based on

_____

[3] Although Appellant invokes both the federal and state constitutions, he presents no argument suggesting that the Pennsylvania Constitution affords greater protection. Accordingly, we treat the rights to be coextensive for purposes of this appeal. *See*, *e.g.*, *Commonwealth v. Baker*, 78 A.3d 1044, 1048 (Pa. 2013) (indicating no separate state constitutional review is warranted in the absence of a separate analysis pursuant to the factors established in *Commonwealth v. Edmunds*, 586 A.2d 887 (Pa. 1991)).

the Confrontation Clause, the charges against Michael should have been dismissed based upon his failure to appear. *Id*.

Appellant's complaint that the Commonwealth failed to call one of the victims as a witness does not implicate the Confrontation Clause. As indicated above, the clause provides that Appellant has the right to cross-examine the witnesses who actually testify. The Confrontation Clause does not require the Commonwealth to call the victim of a crime as a witness to prove that the crime occurred. *See Commonwealth v. Allen*, 429 A.2d 1113, 1116 (Pa.Super. 1981) ("The Sixth Amendment right to confrontation extends only to witnesses whose testimony is presented. . . . [T]he Commonwealth is not obligated to call the victim of a crime as a witness."). In any event, as the trial court observes, Appellant was aware that Michael Pekula was out of town and would not testify at trial, yet he failed to object based on the Confrontation Clause or otherwise to the witness's absence.[4] *See* Trial Court Opinion, 7/8/21, at 18 (citing N.T. Trial, 9/27/11, at 74). Thus, based on waiver or its substance, Appellant's Confrontation Clause claim merits no relief.

In his last issue, Appellant argues that the Commonwealth presented perjured testimony at trial from victim Patricia Cassidy. Specifically, Appellant asserts that Ms. Cassidy testified at trial the police took her in the middle of

---

[4] Rather, Appellant raised a hearsay objection and succeeded in precluding Chris Pekula from testifying about what his brother said during the robbery. *See* N.T. Trial, 9/27/11, at 73-75.

the night to identify Appellant at the hospital, but she did not include that information in her police statement or in her testimony at the preliminary hearing. *See* Appellant's brief at 25. She further testified that she did not remember giving a second police statement. *Id*. Appellant concludes from this that Ms. Cassidy offered "false and misleading" trial testimony by testifying to something that she had not testified to previously. He claims that this statement, inconsistent with her prior testimony, was not admissible. *Id*. (citing *Commonwealth v. Lively*, 610 A.2d 7, 10 (Pa. 1992) ("[A] prior inconsistent statement may be used as substantive evidence only when the statement is given under oath at a formal legal proceeding; or the statement had been reduced to a writing signed and adopted by the witness; or a statement that is a contemporaneous verbatim recording of the witness's statements.")).

Appellant plainly misunderstands the import of decisions governing the use of prior inconsistent statement. The authority he cites addresses when an out-of-court statement may be introduced at trial when the witness testifies in a manner inconsistent with that prior statement. *See also* Pa.R.E. 803.1(1) (detailing requirements for prior inconsistent statements to be excepted from the rule against hearsay). Rule 803.1(1) would have prevented the Commonwealth from introducing as substantive evidence a prior statement from Ms. Cassidy that was inconsistent with what the jury heard from her at trial if the statement it sought to offer was not given under oath, in a signed

writing, or in the form of a contemporaneous electronic recording. Nothing in the law concerning prior inconsistent statements requires a lay witness's testimony to stay within the four corners of her prior statements.

At Appellant's trial, the Commonwealth offered no prior inconsistent statement from Ms. Cassidy into evidence. As the trial court explains, Ms. Cassidy's trial testimony was not inconsistent with her preliminary hearing testimony, as at that time she only described the robbery itself, and was not questioned about her identification of Appellant. **See** Trial Court Opinion, 7/8/21, at 19-20. Appellant's failure to delve into that subject matter at the preliminary hearing did not somehow preclude Ms. Cassidy from offering the testimony at trial. Thus, Appellant's final issue is wholly devoid of merit.

For the foregoing reasons, we conclude that Appellant has presented no basis for this Court to disturb the jury's finding of guilt. Accordingly, we affirm his convictions and his resultant judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/15/2022

- 18 -